JONATHAN C. GREELEY ET AL., APPELLANTS, VS. GEORGE A. DECOTTES ET AT., APPELLEES.

1. D. mortgaged a tract of land to J. C. & Co., and there was a misdescription in the land so mortgaged in certain courses and distances; the mortgage was foreclosed and the land sold, the mortgagees being the purchasers at the sale, the misdescription of the land being carried into the foreclosure proceedings and into the deed thereunder. The purchasers conveyed the land, and there have been various conveyances of parts of said land down to complainants: *Held*, That a court of equity has power to correct the misdescription of the land in the mortgage, the decrees and the deed from the master, so as to make the same conform to the true intent of the parties to the mortgage, or to give equivalent relief by injunction.

2. Where a bill filed against the heirs of a mortgagor alleges a mistake in the description of land as indicated above, and that the mortgagor and mortgagees intended the alleged true description, and that the mortgagees who purchased at a foreclosure sale took possession of the land according to the true description, and that he and those claiming under him have since held possession according to the true description, and that the mistake has been but recently discovered, there is equity in the bill, and upon demurrer, for want of equity, the bill should not be dismissed, but the demurrer should be overruled and the defendant required to answer or plead to the bill.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*H. Bisbee* for Appellants.

*Hartridge & Young* for Appellees.

The only question presented by the record is did the Circuit Court err in sustaining the demurrer to appellants' bill, and in dismissing the same. We concede what counsel for appellants alludes to so often in his brief, to-wit: that the demurrer admits every material averment contained in the bill. At the same time we respectfully ask the court to bear in mind that other equally important rule, that every pleading is construed most strongly against the pleader. The presumption of law is that complainants have made in their bill as strong a case as the facts would permit them.

The allegations of the bill stated concisely are as follows: That in November, 1852, E. A. DeCottes and wife mortgaged to Jeffers, Cothran & Co. a certain parcel of land. That they intended to mortgage a certain tract of land purchased from one Jones, of which the piece mortgaged was a part. That the failure to include the entire tract was a mistake. That Jeffers, Cothran & Co. never discovered the mistake. That they filed their bill to foreclose the mortgage and the certified copy of the bill and proceedings are appended to the bill in this case and made a part thereof. From this record, and the copy of the mortgage attached, it appears that there was another tract of thirty-five (35) acres included in the mortgage. It also appears that Jeffers, Cothran & Co. held mortgages on two lots in the city of Jacksonville, to secure this same debt, and that all the mortgages were foreclosed at the same time, and all the several parcels of land ordered to be sold by the same decree. It also appears from the bill that Jeffers, Cothran & Co. purchased all the property, but they fail to show the amount paid for the several parcels, and the presumption is that they purchased all of the several parcels of land, the right of redemption in which was fore-

closed and which were ordered to be sold by the decree of the court in the foreclosure suit, for the sum found to be due them. It should be borne in mind that one of the lots, as appears from the exhibits to the bill, had a saw-mill upon it, and that the amount found due Jeffers, Cothran & Co. was less than $1,200. The bill avers that Jeffers, Cothran & Co. sold the land purchased by them, and that the property has changed hands several times, no grantor undertaking to convey any other land than that described in the mortgage, the decree of foreclosure and the master's deed, until one Jones undertook to convey to Hanson the lands which had been conveyed to DeCottes, and the title to which had never passed out of DeCottes, by reason of the mistake in drawing the mortgage to Jeffers, Cothran & Co. The complainants in this bill were bound at their own peril to take notice of the several grants by, through and under which they acquired title, and these deeds put them on notice, as did the decree of foreclosure, that they were not getting all the land conveyed to DeCottes by Thomas W. Jones, but only a portion thereof. If they failed to examine the deeds it was their own laches, and they must suffer the consequence. What has been said seems to us sufficient to show that these complainants have no right to relief against these defendants. Jeffers, Cothran & Co. have gotten their money, and are satisfied, and are not complaining of the mistake. These complainants cannot be in a better position, because of the mistake in drawing the mortgage, than they would be in if there had been no such mistake, and the mortgage had covered all the land intended to be mortgaged, but in drawing the decree of foreclosure a portion of the mortgaged land had been omitted, and only part had been ordered sold and the part so ordered sold with other property mortgaged to secure the same debt had paid the

amount due. Would either the purchaser or the mortgage creditor be heard to come into court and say that by mistake the court had failed to decree a foreclosure as to a part of the land mortgaged, had failed to have part sold, and that notwithstanding that the part sold had produced money enough to satisfy the mortgage debt and costs, yet because of the mistake the court should decree a conveyance to him of land as to which there had been no decree of foreclosure and no sale? The idea is preposterous. Yet that is what is asked here. Even if the mortgage debt was not satisfied by the sale, and complainants do not aver that it was not, after a lapse of thirty years the court will presume that any balance due, after applying the proceeds of the sale, has been paid, unless the contrary is plainly alleged and shown. Buckmaster vs. Kelley *et at.*, 15 Fla., 190, and authorities there cited.

Counsel for appellants ignores this view of the case in his brief though this was the view pressed upon the consideration of the Chancellor by counsel for appellees.

We have examined all the authorities cited by counsel for appellants and find that far the larger part merely establish what we would be the last persons to deny, viz: that in a proper case a court of chancery will correct a misdescription or mistake in a deed or other written contract. We will confine ourselves to a discussion of those authorities cited which have some appearance of being in point.

In White vs. Wilson, 39 American Decisions, 437, it does not appear that the mortgage had been foreclosed at the time of filing the bill to reform.

In Quivey vs. Baker, 37 Cal., 465, there had been a foreclosure of the mortgage a few years before the filing of the bill, but it appears that in making the sale the Sheriff

pointed out the true lot as that which he was about to sell, and also that there was no such lot as the one described in the mortgage. The true lot was sold, and hence the court properly corrected the mortgage, decree and Sheriff's deed. There is no averment contained in the bill in the case at bar that the entire tract of land which it was intended to mortgage had been pointed out as the property that was being sold.

In the case of Waldron vs. Letson, 15 N. J. Eq., 126, the mortgage was " on all that certain lot of land, with the *erections* thereon," describing the land by metes and bounds, but leaving off in the description some addition to the premises. At the time of the sale and for many years this addition had been enclosed and used with the tan yard lot and part of the principal building stood on the addition. The property as intended to be mortgaged was known as the tan yard property and was enclosed at and before the time of the sale. The property when offered for sale by the Sheriff was spoken of as the tan yard property. The purchaser took possession of the entire enclosed premises. There is no pretense in the case at bar that at the time of the sale of the land intended to be mortaged was enclosed, or pointed out by the Sheriff or referred to or described in any way other than as described in the mortgage and the decree of the court.

In Blodgett *et al.* vs. Hobart *et al.*, 18 Vt., 414, appellants' counsel has cited an authority which sustains our view of the law and our thanks are due him therefor. This was a case of a mortgage which had been foreclosed, and the court says, on page 423, " it would be going too far to create a mortgage and cut off the equity of redemption at a single stroke. To warrant it, the mortgagor must have done some act to conclude himself from the right. As Hobart

must be allowed to redeem the home farm and the two and a half acres, we think the equity of redemption should also be opened as to his other property foreclosed." We consider this the true exposition of the law. The appellees would be delighted to have the decree of foreclosure in the case of Jeffers, Cothran & Co. vs. DeCottes opened and themselves let in to redeem. They would cheerfully pay many times the amount due on the mortgage and interest thereon for the privilege of redeeming.

We respectfully refer your honors to the following authorities to support the action of the Circuit Court in sustaining the demurrer to the bill and dismissing it for want of equity, viz: Davenport vs. The Widow and Heirs at Law of Sovill, 6th Ohio State Reports, 459. This case cites and follows the doctrine of Blodgett *et al.* vs. Hobart *et al.,* 18 Vt., 414.

The Supreme Court of Indiana holds that where a mortgage misdescribed the property intended to be mortgaged the mistake may be corrected before foreclosure, or in an action to foreclose; but where the mistake has been carried into the decree of foreslosure, the execution, advertisement and Sheriff's deed, the purchaser at the Sheriff's sale cannot maintain an action to correct the mortgage and decree, the subsequent proceedings, and the deed. Miller vs. Kolb, 47 Ind., 220, cited and approved in Armstrong vs. Short, 95 Ind., 331.

MR. JUSTICE MITCHELL delivered the opinion of the court:

Bill for injunction, &c., was filed December 28, 1885. The material allegations of the bill are:

That in September, 1847, Thomas G. Saunders conveyed to Adeline Jones a tract of land located in Duval county,

Florida, known as the John R. Hogans donation, containing about 640 acres.

That on August 4, 1849, Adeline Jones and her husband, Thomas W. Jones, conveyed to Edward A. DeCottes 50.03 acres of land, which is a part of the Hogans donation, and described as follows: Commencing at the southwest corner of a tract of land owned by the said parties of the first part (the same originally granted to John R. Hogans, as a donation, containing 639.95 acres, conveyed to Adeline Jones by Thomas G. Saunders September 9, 1849,) and running thence north 11 chains, east 14½ chains, north 16½ chains, east 12½ chains, south 27½ chains, thence west 27 chains to point of beginning.

That on 9th of November, 1852, DeCottes and his wife, Antoinette, executed a deed of conveyance to Jeffers, Cothran & Co., whereby DeCottes and wife intended to convey to Jeffers, Cothran & Co. the identical piece of land conveyed to him by said Jones and her husband August 4, 1849.

That the conveyance from DeCottes and wife to Jeffers, Cothran & Co. was to save and secure Jeffers, Cothran & Co. harmless on their liability on certain promissory notes, which they had endorsed and become liable on as accommodation to DeCottes to the amount of $2,000.

That the deed from DeCottes to Jeffers, Cothran & Co. was in legal effect a mortgage, and that it was the intention of DeCottes to include in such mortgage deed all of the said 50.03 acres which had been so conveyed to him, and that Jeffers, Cothran & Co. accepted said deed on the faith that the same included all the tract. That in point of fact there was an omission either by fraud or mistake, on the part of the grantor, in the description of said tract of land in the mortgage deed; that such omission is apparent by

32

comparing the description in the deed to DeCottes with that in the mortgage deed to Jeffers, Cothran & Co. and that such misdescription consists in omitting two courses and distances, to-wit: North 16 chains, east $12\frac{1}{2}$ chains. That by supplying said two courses and distances the description of the parcel of land would be complete and exactly like the description contained in the deed to De-Cottes.

That DeCottes failed to pay the promissory notes mentioned, and that in 1856 Jeffers, Cothran & Co. commenced suit in Duval county, Florida, to foreclose said mortgage deed.

That the mortgage deed was foreclosed, and the land described therein was sold under the decree in said foreclosure proceedings, and that Jeffers, Cothran & Co. purchased said land at said sale ; that deed of conveyance was executed and delivered to them, and that they then took possession of, held and owned said land.

That Jeffers, Cothran & Co. subsequently sold said land to Samuel Fairbanks, and that the same has been sold and conveyed by several intermediate conveyances from said purchaser to divers and sundry persons down to the present date.

That said misdescription of the said tract of land was carried into the foreclosure proceedings, and into the deed executed to the said purchaser at such foreclosure sale, and description was not corrected in any conveyances of the property until the deed of conveyance of one Jones to Hanson.

That DeCottes died in 1862 leaving his wife, Antoinette, Geo. A. DeCottes, Ed. F. DeCottes, Julia A. DeCottes, Walter D. DeCottes and Jessie W. DeCottes, who has since intermarried with F. T. Myers.

That from the date of the sale of the land under the

decree of the foreclosure till the day of his death Edward A. DeCottes never asserted any claim to said land, and that DeCottes up to the day of his death believed that he had in good faith mortgaged all said tract of land. That the said Antoinette, widow of Edward A. DeCottes, died in 1884, and that she never asserted any claim whatever to said land to the time of her death.

That none of the defendants, the children and heirs of the said Edward A. DeCottes, ever asserted any claim to any part of said land until about 11th of April 1878 ; that on said 11th of April they filed a bill in equity, (Duval county, Fla.,) styled a bill for relief, and partition against certain parties then in possession of portions of said tract of land ; that on 31st December 1878, a decree was rendered therein for want of answer, &c. That the defendants have never asserted any interest in and to said land, nor attempted to recover possession of any part thereof under and by virtue of said decree of 31st December 1878, until recently ; that about three months ago they took posses-sion, and fenced in a few acres of said tract of land which was lying vacant.

That the greater portion of said land has become quite densely occupied, being divided up into streets, blocks and small lots, and the defendants are now threatening legal proceedings under their said decree, to recover possession of said tract of land, or compel the occupants to purchase and take conveyance of the same from the defendants.

That complainants are the owners under deed of convey-ance duly executed from parties who were in possession of said tract of land at the time of such conveyance thereof, of portions of the same, and derive their titles thereto by, through and under the said Edward A. DeCottes ; the said foreclosure proceedings and the several intermediate con-veyances mentioned in abstract hereto filed. (No abstract

484 SUPREME COURT.

J. C. Greeley et al., v. G. A. DeCottes et al.—Opinion of Court.

was filed.) That said J. C. Greeley a few years ago became the owner in fee of about five acres of said land which were divided up into lots, of which the said Greeley has sold and executed and delivered warranty deeds of conveyance to about 30 lots, and still owns a small piece in his own right. The complainant, Charles H. Foster, owns about two acres of said land, and that complainants, Foster and Greeley, and all the complainants purchased their land in good faith and for valuable consideration, believing that the foreclosure proceedings, as well as the said mortgage deed, was regular in form and embraced all the lands in question and had no knowledge of or actual notice of the misdescription in the mortgage deed.

That complainants are the owners of forty acres of the said tract of land in question, and are in possession of the same and prosecute this suit for the benefit of themselves and all other owners of any of said tract of land whom may hereafter choose to become parties complainant to this bill, and contribute their share of the expenses therefor.

That the said tract of land has been held in open, notorious adverse and exclusive possession of the complainants and other parties who own portions thereof, and by persons by, through and under whom said other grantors, the complainants, and other persons, derive their title, ever since the sale under the said foreclosure of mortgage up to the present time, except a small portion thereof, which defendants have recently taken possession of and fenced in as aforesaid.

That the omission of the two courses and distances in the mortgage deed, and the misdescription of the premises therein, operate to cast a cloud upon complainants' title and effect the market value of their land.

That the said decree in favor of the defendants of De-

cember 31, 1878, operates as a cloud upon complainants' title.

That the said decree of the 31st December, 1878, is in point of fact and in law inoperative for any purpose ; that the defendants' bill on which said decree was rendered does not describe any land whatever, nor does their said decree give any intelligent description of any of the said lands ; that no rights, titles or interests of the said complainants, or any of them, or any of the said defendants, were adjudicated by said decree, and that said court that rendered said decree had no jurisdiction, power or authority to make or render a decree of that character.

That said decree and all of the said proceedings on the bill in equity filed by the defendants on 11th day of April, 1878, are, in point of fact and law, a nullity. But while the decree remains in apparent force and effect it operates as a cloud upon the title of complainants, and furnishes a pretence on the part of defendants to threaten complainants with litigation to disturb their possession and impair the value of their property.

Prayer for injunction to restrain defendants from setting up, claiming or asserting in any court of law or equity any right or title whatever in and to said land, &c.

That defendants be decreed to execute to complainants, or some other person as a trustee for complainants, a release or quit claim deed, or other suitable instrument in writing, conveying or releasing to complainants or such trustee, all their pretended rights, &c., in and to said land.

To set aside, cancel and annul the said decree dated December 31, 1878, and for general relief.

The bill was demurred to: 1st. That said bill, even if the same was true, contains no matter of equity whereon this court can ground any decree or give complainants any relief as against these defendants. 2d. That the said bill

does not show that the complainants have any title, legal or equitable, to the lands claimed by the defendants and which are the subject matter of this litigation. 3d. Because the bill shows that the mortgaged deed under which complainants claim title was satisfied by sale, under foreclosure proceedings, of the lands therein described and which are not claimed by defendants and are not the subject matter of this litigation. 4th. Because the bill shows that the mortgage deed under which the complainants claim title became due over thirty years ago and fails to show that the indebtedness therein and thereby secured has not been paid and settled in full. 5th. Because the bill shows that the mortgage under which complainants' claim has not been foreclosed as to the land involved in this litigation and claimed by the defendants.

Upon argument the demurrer to the bill was sustained, and the bill dismissed, from which ruling sustaining said demurrer and dismissing the bill the case was appealed.

Errors assigned are:

1st. That the Circuit Court erred in sustaining the demurrer to the bill of complaint, and in decreeing the dismissal of said bill.

2d. That said Circuit Court erred in ruling as it did rule that the complainants had lost their right to any relief by their laches and lapse of time.

3d. That the said Circuit Court erred in ruling that they had not in their bill stated a case entitling them to any relief.

Counsel for appellants treats the assignments of error under the general head that the court erred in sustaining the demurrer and dismissing the bill.

The demurrer admits the allegations of the bill of course, but avers that the bill contains no matter of equity whereon the Circuit Court could ground any decree, and we as-

sume that the Chancellor, in the court below, came to the same conclusion, otherwise he would not have decreed the dismissal of the bill.

Appellees' counsel admit the general rule, that courts of equity will correct misdescriptions or mistakes in deeds and other written contracts but contend that this case does not fall under the general rule, and that this is a case in which the aid of a court of equity cannot be invoked for the purpose of having the instruments involved in the case reformed as contended for by complainants.

The rule that courts of equity have authority to reform all deeds, mortgages, contracts, and all similar instruments, so as to make them conform to the true intent of the parties thereto, is well established. That the privity between DeCottes and Jeffers, Cothran & Co. followed all voluntary intermediate conveyances of said land down to the complainants is likewise well established, and, assuming that we are correct in this proposition, did not the complainants have the right to appeal to the court, as they did, to have the mistakes complained of corrected, so as to remove the cloud from their title, and was it not the duty of the court to grant the relief prayed for in regard thereto? We think that complainants applied to the proper court to have their title corrected, and that the Chancellor erred in sustaining the demurrer and decreeing the dismissal of the bill.

We are aware of the fact that the authorities are not uniform upon the question under consideration, that is, as to whether courts of equity have power to correct mistakes in deeds, &c., but our views are in conformity with the weight of authorities on the subject. Counsel for appellees, in support of their position, that the Circuit Court had no authority to reform the instruments under consideration, cite the cases of Davenport vs. The Widow and Heirs at

Law of Sovill, 6 Ohio State, 459 ; Miller vs. Kalb, 47 Ind., 220 ; Armstrong vs. Short, 95 Ind., 331. In the first of these cases suit was commenced in the court below by petition to have a misdescription in a mortgage corrected ; but the decision in that case was under a statute of the State of Ohio, and does not apply to this case.

In the second authority cited by appellees (Miller vs. Kalb, 47 Ind., cited and approved in Armstrong vs. Short, 95 Ind., 331,) the court held that when a mortgage has been foreclosed and the property sold there can be no reformation of the Sheriff's deed in the way of correcting an erroneous description. This is directly in point and it sustains the appellees' view of this case, but it is not in accord with the great weight of authorities upon this subject.

Judge Story, (1st Story Eq. Jur., sec. 152,) treating on this subject, says : " One of the most common classes of cases, in which relief is sought in equity, on account of a mistake of facts, is that of written agreements, either executory or executed. Sometimes by mistake the written agreement contains less than the parties intended ; sometimes it contains more ; and sometimes it simply varies from their intent by expressing something different in substance from the truth of that intent. In all such cases, if the mistake is clearly made out by proofs entirely satisfactory, equity will reform the contract, so as to make it conformable to the precise intent of the parties. But if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief, upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy." The same doctrine is laid down in Pomeroy's Eq. Jurisprudence, vol. 2, sec. 849, etc., also in Gillespie vs. Moon, 2 Johns. Chan., 585, 596. In German Mutual Ins. Co. vs. Grim et al., 2

Am. Rep., (32 Ind., 249,) it was held that a purchaser under a foreclosure of mortgage, containing an erroneous description, was entitled to have the mortgage reformed as against a prior voluntary grantor in a deed executed prior to the mortgage deed. In Waldron vs. Letson, 15 N. J. Eq., 126, the facts were, that under an erroneous description of the mortgage property the entire premises intended to be included were not included ; the mortgage was foreclosed and the property sold, the misdescription being carried into the foreclosure proceedings and deed to the purchaser. The purchaser took possession of the whole tract, including that not embraced in the mortgage. The mortgagor having died, his son afterwards brought ejectment against the purchaser to recover possession of the land not embraced in the mortgage and deed to the purchaser. Held, that the son should be perpetually enjoined from setting up any title to the land. In Quivey vs. Baker, 37 Cal., 463, held, that when a mortgage did not cover a lot, (which was a lot to which the mortgagor had really no title,) and was a quit claim when it should have been a warranty, and the mortgagor afterwards took title to the lot in the name of a third person so as to escape the mortgage, a purchaser at foreclosure sale was relieved by reforming the mortgage as to description and warranty so that the title might inure to him.

There are other authorities before us in which the doctrine is laid down as in the authorities above cited, but we do not think it necessary to refer to further authorities on the subject. Those we have referred to, in our opinion, show that there are equities in the bill which entitle the complainants to the relief asked.

In speaking of the rule which admits parol evidence in suits brought to reform written instruments, Judge Story

says: "It is difficult to reconcile this doctrine with that rule of evidence at the common law which studiously excludes the admission of parol evidence to vary or control written contracts." 1st Story Eq. Jur., Sec. 154.

And in Sec. 157, that "relief will be granted in cases of written instruments, only when there is a plain mistake, clearly made out by satisfactory proof."

As the case will have to be reversed for the reasons stated, we do not consider the other questions raised by the pleadings and the arguments.

The decree is reversed, and it is ordered that the cause be remanded for further proceedings not inconsistent with this opinion.