# Tillis v. Smith.

*Bill in Equity to Correct Mistake in Deed.*

1. *Reformation of deed to homestead of husband.*—A reformation may be had of a conveyance designed to pass the husband's exempt homestead, which by mistake fails correctly to describe it, provided the instrument is executed and acknowledged by him and his wife, in conformity with the statute governing such cases.

2. *Same; parties* —When a mistake occurs in a series of conveyances, the last vendee may have the deeds corrected. *Prima facie*, the grantee of a deed containing a mistake, is the proper party to seek its reformation, and if anything has occurred, whereby his right has been lost, it must be shown by appropriate pleading and proof.

3. *Same; collateral agreement.*—The fact that at the time of the execution of a deed containing a mistake, the parties made a collateral agreement that the deed should operate as a mortgage, intending thus to defeat the rights of a third party, is no reason why the deed should not be reformed   The office of that remedy is not to have the effect of the deed adjudged, but rather to declare the *status* which the parties intended to create, and upon which, such rights as they would have acquired under a correct instrument may be asserted and defended.

APPEAL from Geneva Chancery Court.
Heard before the Hon. JERE N. WILLIAMS.

[Tillis v. Smith.]

The facts upon which the opinion is based, are sufficiently stated therein.

M. E. MILLIGAN, for appellant.

CLAYTON & MULKEY and G. E. McGOWAN, *contra*.

HEAD, J.—It is not denied that the instrument, whose reformation is sought by the bill, misdescribes the lands, which the appellees agreed to convey to the appellant, and for the purpose of conveying which, they went to his place of business, in the town of Geneva. It is admitted that the appellee, R. T. Smith, did not own any land in section 25, but that he was possessed of the corresponding subdivisions in section 28, constituting his homestead, and upon which the appellant had a first mortgage. In his testimony, Smith says, that he had previously mortgaged these lands to appellant, and that he intended to deed the same lands lying in section 28, instead of section 25. There is, therefore, no room for doubt or controversy, that a mistake was made by the scrivener, in respect of the description of the lands, and that, in its present form, the instrument does not express the true intention and meaning of the parties. The jurisdiction of a court of equity, to correct such mistakes, when admitted or established by the necessary measure of proof, is too well settled and has been too often successfully invoked in this State, to require a citation of the cases, to be found in our reports, upon this subject. And at this time, it is no longer open to debate, that reformation may be had, of a conveyance designed to pass the husband's exempt homestead, but which by mistake, fails to correctly describe it, provided the deed or mortgage is executed and acknowledged by him and wife, in conformity with the statute governing such cases.—*Gardner v. Moore*, 75 Ala. 394; *Parker v. Parker*, 88 Ala. 362. The opinion in the case first cited, states, *arguendo*, that the reformation in description, which was there prayed for in the bill, did not seek to locate the land in a different section, but to correct an admitted imperfection in. the designation of it, by erroneous land numbers, belonging to the same section. The fact thus noted was not made the basis of the decision which lacks much of being an adjudication

[Tillis v. Smith.]

that reformation will be denied, if the mistake is made in respect of the section number. On principle, there is no logical foundation for such a distinction. The same results follow a mistake as to the section, which accompany a mistake as to subdivisions of the same section. In either case, the mistake is equally harmful, and every reason which exists for correcting the misdescription in the one instance applies with equal force to the other. It follows, therefore, that the appellant was entitled to relief unless an obstacle is to be found in some of the special defenses, incorporated in the answer. These special defenses were four in number, and were set up separately in the form and under the designation of pleas. The *first* plea denies the execution by Mrs. Smith of the deed, by mark or otherwise, and asserts that the mark purporting to have been made by her was not made by her nor by any one thereunto lawfully authorized. In his decree dismissing the bill, the chancellor recites, there was not sufficient evidence to establish the fact of the execution of the deed by Mrs. Smith, and, therefore, the appellant was not entitled to relief. We do not concur in this view of the evidence, and that, too, without regard to whether the burden of proof upon this issue was with the appellant or the appellees. In addition to the evidence of the appellant, Hall, the draftsman of the conveyance, and Cowan, the justice of the peace, who certified the acknowledgments, neither of whom is shown to have any interest in the controversy, testify to the execution of the deed by her. The contrary testimony of the appellees, does not impress us favorably. Smith swears that appellant told him to come to Geneva and bring his wife with him to make the deed, and in point of undisputed fact, he did bring her. If she had any other reason for coming, than to join in the instrument, it is not shown. It thus appears the necessity for the signature and assent of the wife was brought to the attention and was in the minds of both parties. Mrs. Smith testifies, that she agreed to sign the deed conditionally, the conditions being that the deed should operate as a mortgage, and her husband be allowed five years to redeem. The husband says this parol agreement was made and upon the faith thereof, he executed the conveyance; so that, under these circumstances, it is not reasonable to suppose she declined

[Tillis v. Smith.]

to sign the deed, as she now testified, or that the appellant would have accepted it, and altered his condition with respect to the security he already had, without her signature.

The decree appealed from cannot be sustained, upon the ground which influenced its rendition. The same considerations require us to decide adversely to the appellees, upon the *second* plea, which averred the wife was not examined separate and apart from the husband, as the justice of the peace certified. We must not, however, be understood as conceding that the appellees made a case, authorizing them to impeach, by parol evidence the certificate of the officer, made in due form, after the parties were brought within his jurisdiction, for the purpose of making acknowledgment of the conveyance. Our rulings on this subject are familiar, and we need not now refer to them. The *third* plea is very meagre in its statements. It does no more than aver that, before the filing of the bill, the appellant conveyed by deed to a third party, not named, the lands described in Smith's deed; that is, the lands lying in section 25, and from this single fact, which the appellant admitted, it is argued by counsel for appellees, that the appellant is not a proper party complainant. It has been ruled, and we think correctly, that when a mistake occurs in a series of conveyances, the last vendee may have the deeds corrected. *Blackburn  v.  Randolph,*  33  Ark.  119;  *May  v. Adams,*  58  Vt.  74;  *Greely  v.  DeCottes,*  24  Fla. 475;  5  So.  Rep.  239;  *Parker  v.  Starr,*  21  Neb. 680. From this principle, it is argued that the right of the grantee, in the conveyance wherein a mistake occurs, to have it reformed, is destroyed by his deed to another, containing the same mistake. Although the second conveyance would establish a privity between the grantee therein, and the grantor in the first conveyance, entitling the former to seek a correction of the first conveyance, we are by no means prepared to admit, that this would, of necessity, disable the first grantee from procuring the correction to be made, upon a bill filed by him. The second grantee might not desire to do more than have a correction of the immediate conveyance to himself, leaving to the first vendee the task of protecting himself by procuring a correction of the first conveyance. We have found no case holding the

[Tillis v. Smith.]

proposition asserted by counsel. The opinion in *Ballentine v. Clark*, 38 Mich. 396, which has been cited as an authority in point, does not support the general proposition, contained in its head note, which asserts that before a deed may be reformed for a mistake, it must be shown that the complainant holds under it. In that case, the complainant was not a party to the deed sought to be corrected, but the instrument had been made to a person claimed to be a remote grantor of the complainant, into whom the testimony failed to trace title. It was held that he had failed to show a right to relief, it not appearing he had any interest to be subserved by the desired correction. If the head note had said, that before a deed may be reformed for a mistake, *at the suit of a person not a party thereto*, it must be shown that complainant holds under it, it would have stated the full extent of the decision, whose correctness none will controvert. We can easily imagine cases in which it would be necessary for a grantee to have a deed corrected, in order to protect his rights, although he had, theretofore, made a conveyance to another in which the error was continued, or which contained an accurate description of the property. We need not, however, decide the abstract question of law, which counsel for appellees have maintained in argument. The plea does not aver that any mistake was made in appellant's conveyance to the third party, and hence it utterly fails to show any privity between that person and Smith, which would authorize him to file a bill to reform the conveyance executed by Smith to the appellant. For aught that appears therein, it was well understood between appellant and his grantee, that the former was to convey to the latter the very lands, lying in section 25, which were conveyed, and for anything to the contrary which the plea shows, appellant's grantee neither has nor claims any right or interest whatever in the lands lying in section 28. *Prima facie*, at least, the appellant, as a party to the conveyance made by Smith, is the proper person to seek its reformation, and if anything has occurred whereby his right has been lost, it must be shown by appropriate pleading and proof. It is perfectly plain to us, that the fact averred in the *third* plea furnishes no valid objection to the maintaining of this bill by appellant.

The *fourth* plea alleges, in substance, that the deed

[Tillis v. Smith.]

was executed, in reliance upon an agreement with the appellant, that it should operate as a mortgage, and that he would allow them five years, within which to redeem the property, without disturbing their enjoyment of the lands. It is further alleged, that the appellant told them at the same time, that the deed would defeat a second mortgage, held by a third party and executed subsequently to the giving of the first mortgage to the appellant. From these facts, the plea seeks to draw the legal conclusion, that the appellant does not come into court with clean hands.

It is not claimed that the agreement, by which the conveyance was to operate as a mortgage, was intended to be asserted in the instrument; on the contrary, it is evident the parties intended to execute a conveyance, absolute in terms, no matter what its operation was expected to be. If the alleged agreement was, in fact, made, remedies exist which are adequate to effectuate the rights of the defendant, growing out of the same. The existence of that agreement should not defeat a reformation of the deed, since a decree of reformation, would not prevent the defendants from availing themselves of all proper remedies, to secure whatever rights they have, by virtue of the oral agreement. In this proceeding, no question upon the operation and effect of the conveyance arises. As we said in a similar case, "The office of the remedy invoked in this case, is not to establish and effectuate rights—not to have the effect of the deed adjudged—but rather to declare the *status*, which the parties intended to create, and upon which, such rights as they would have acquired, under a correct instrument, may be asserted and defended. The real question is, not what the instrument was intended to mean, or how it was intended to operate, but what it was intended to be." *Parker v. Parker*, 88 Ala. 362; *Ala. Midland Railway Co. v. Brown*, 98 Ala. 647. Nor was the expression of the opinion by appellant that the deed would defeat the second mortgage, the doing of such inequity as will prevent his having equity. The fact is the second mortgage cannot be impaired by any agreement between the mortgagor and first mortgagee. The making of the deed in question was the doing of a legal act, entirely valid between the parties, and having no capacity to work wrong or injury to the second mortgagee, whose

[White v. Yawkey.]

rights were fixed and defined by law. Those rights remained in all respects the same after as before the execution of the deed. If the parties to this suit acted under the belief that the deed would defeat or defraud the second mortgagee, they were mistaken in the assumption. If their specific purpose was to accomplish that, the act performed was impotent to effectuate it. The law looks rather to their act than their mere intent, and does not place beyond the pale of its protection a valid agreement, merely because it was inspired by a bad motive or was dictated by the mistaken opinion that it would work injury to another. The fourth plea showed no sufficient reason why the mistake in the description of the lands should not be corrected.

The decree of the chancellor must be reversed and a decree here rendered awarding the complainants appropriate relief.

Reversed and rendered.