(89 South. 739)

**BAGLEY v. BAGLEY et al.   (6 Div. 281.)**

(Supreme Court of Alabama.   May 19, 1921. Rehearing Denied June 23, 1921.)

1. **Reformation of instruments ⬅33—All parties interested in land sought to be redeemed proper parties to cross-bill to reform deed to purchaser from trustee's vendee.**

In a suit to redeem land sold by a trustee in bankruptcy, there was no error in making as parties respondent to a cross-bill for reformation of a deed to defendant from such trustee's vendee all parties interested in the land, in order that a binding decree might be rendered.

2. **Bankruptcy ⬅257—No right of redemption of lands not set apart as exempt.**

There is no right of redemption from a trustee's sale of lands of a bankrupt whose property or interest therein was not set apart to him as exempt.

3. **Reformation of instruments ⬅19(1) — Court may correct misdescription in conveyance from trustee.**

A court of equity has inherent jurisdiction to reform a conveyance from a trustee in bankruptcy by correcting a misdescription made by mutual mistake.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 205 Ala. 369.

**4. Reformation of instruments ⟨⟩33 — Creditors of bankrupt owner not necessary parties.**

After the sale and disposition of the purchase price of lands not set apart to the bankrupt as exempt, his creditors, having no interest therein, are not necessary parties to a cross-bill, in a suit for redemption, to reform a conveyance to defendant from the trustee's vendee.

**5. Reformation of instruments ⟨⟩33—Trustee proper party to bill for correction of description in conveyance by him to purchaser's vendor.**

In a suit to redeem lands sold by a trustee in bankruptcy, such trustee is a proper party respondent to a cross-bill, in a suit to redeem, to correct a misdescription in the conveyance by him to defendant's vendor.

**6. Reformation of instruments ⟨⟩33—Bankrupt's vendees, deeds to whom set aside as fraudulent, not necessary parties to bill to reform conveyance by trustee.**

Vendees, conveyances to whom by a bankrupt prior to adjudication were set aside as fraudulent, were not necessary parties to a cross-bill, in a suit to redeem, to correct a misdescription in deeds from the trustee in bankruptcy to defendant's vendor, and from the latter to defendant, the effect of the decree setting aside such conveyances being to vest the interest of the bankrupt and his vendees in the trustee.

**7. Bankruptcy ⟨⟩257—Bankrupt has no interest founded on antecedent title to lands fraudulently conveyed before adjudication and not scheduled.**

A bankrupt, who fraudulently conveyed land prior to his adjudication and did not list it in his schedules, had no interest therein founded on antecedent title, nor could subsequent equities in his favor be rested on such title, so as to enable him to redeem the land.

**8. Reformation of instruments ⟨⟩19(1)—Mutual mistake in description of property in conveyance from trustee does not affect his title and that of his vendees.**

The effect of a decree setting aside conveyances of lands by a bankrupt prior to adjudication being merely to clear the title and confirm the superior title in the trustee, in whom, immediately on his appointment following adjudication, the property vested, irrespective of the deed to him by the register in chancery, the fact that a mutual mistake in the description of the property was contained in the several conveyances by himself and successors in title could not affect his real title nor that of his vendees.

**9. Reformation of instruments ⟨⟩28—Where mistake repeated in chain of conveyances, last vendee may reform against original grantor.**

Where the same mutual mistake has been repeated in each of a chain of conveyances, under such circumstances as to entitle any one of the vendees to reformation as against his immediate vendor, equity will work back through all, and entitle the last vendee to a reformation against the original grantor.

**10. Bankruptcy ⟨⟩257 — Bankrupt's right of redemption held barred by lapse of time.**

Where land of a discharged bankrupt was sold by his trustee on August 10, 1909, and resold by vendee February 28, 1913, and no bill for redemption filed until September 6, 1913, the right of redemption, if any, was barred by lapse of time.

**11. Bankruptcy ⟨⟩257 — Redemption not authorized by purchaser's agreement to allow time to redeem, where purchase price not repaid nor refused within such time.**

Though a purchaser of land from a trustee in bankruptcy, six months prior to the filing of a bill for redemption, agreed in writing to allow the bankrupt six months time in which to redeem or repurchase the land, and stated to a third party the day before the filing of such bill that he was willing to make a deed for all the land except that which he claimed to own an interest in at the time of the adjudication and such statement was communicated to the bankrupt, the latter's unsuccessful effort to find the purchaser and repay him the amount paid for the land was not sufficient to warrant a decree allowing redemption, even though the bill was seasonably filed, where the evidence showed that payment was neither made nor refused within the time agreed on.

**12. Specific performance ⟨⟩14—Agreement of one of two purchasers of bankrupt's land to allow redemption within certain time not specifically enforceable without consent of other.**

An agreement by one of two purchasers of land from a trustee in bankruptcy's vendee to allow the bankrupt a certain time in which to redeem could not be specifically enforced without the consent of the other purchaser, even though there was a sufficient consideration, the enforcement of such contract depending on the assent of one not bound thereby.

Appeal from Circuit Court, Jefferson County; Horace C. Wilkinson, Judge.

Bill by Wm. A. Bagley against John W. Bagley and others to redeem certain land, with cross-bill by respondents for reformation, etc. From a decree granting the relief prayed under the cross-bill, and denying relief under the original bill, complainant appeals. Affirmed.

Harsh, Harsh & Harsh, of Birmingham, for appellant.

The effort to redeem or to buy was within the time fixed by the contract, and was sufficient. 200 Ala. 382, 76 South. 298. The effort of John Bagley to put his wife secretly as a purchaser, and therefore not bound by the obligation, was highly inequitable. 16 Ala. 333, 50 Am. Dec. 181; 21 R. C. L. 891, 907. The bill was filed in time. 87 Ky. 107, 7 S. W. 881.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Arthur L. Brown, of Birmingham, for appellees.

The cross-bill clearly pointed out the mistakes, and entitled cross-complainant to a reformation. 108 Ala. 264, 19 South. 374; 6 Pomeroy's Eq. 678. A bankrupt never has the right to redeem from a sale by his trustee.

THOMAS, J. The purpose and prayer of the bill by W. A. Bagley were for redemption against respondent John W. Bagley.

[1] Respondent's answer was made a cross-bill, disclosed his joint interest in the lands with N. E. Bagley, prayed that Isham D. Hobbs, as trustee of the bankrupt estate of W. A. Bagley, Jonas Schwab, as vendee, and N. E. Bagley, as vendee of Schwab, be made parties respondent, sought correction of said conveyances, and for accounting for occupation and for waste. There was no error in making as parties respondent to the cross-bill all parties at interest in the land, in making the correction of mutual mistake of the conveyances thereof, and in its redemption, that a binding decree may be rendered. Cornelius v. Bishop, 88 South. 592, 205 Ala. 503; Wootten v. Vaughn, 202 Ala. 684, 81 South. 660.

Complainant W. A. Bagley, a bankrupt, having failed to schedule the lands in question or his interest therein, had theretofore conveyed the same to his relatives, who were thereafter made respondents to a bill in equity by the trustee in bankruptcy of this complainant. Such conveyances were set aside as fraudulent under the statutes provided for such cases. Thereafter said trustee in the due administration of his trust sold and conveyed the lands to one Schwab, who conveyed to John W. Bagley and N. E. Bagley for the valuable consideration indicated.

If complainant W. A. Bagley sustain his bill, it is upon an alleged agreement to redeem or sell within the time indicated, which writing was executed by John W. Bagley alone. Said respondent in the original bill and complainant in cross-bill filed pleas A and B, averring that W. A. Bagley had no right of "redemption," and that the written agreement on which complainant predicated his right of redemption was without consideration. With the pleas were averments of fact showing that complainant could not recover under his bill for redemption, and setting up a mutual mistake in the description in the several conveyances of the land, from the trustee in bankruptcy to Schwab, and that to John W. and N. E. Bagley, which gave the right of reformation to the end that the conveyances speak the true intention of the parties thereto. On final submission the decree was pursuant to the averments and prayer of the cross-bill, and was supported by the evidence.

[2, 3] When W. A. Bagley was adjudicated a bankrupt, no part of his property or interest in these lands was set apart to him as exempt. His title thereto and interest therein vested in the trustee in bankruptcy, who sold them to Schwab, and from which sale there was no right of redemption. Duncan v. Watson, 198 Ala. 180, 188, 73 South. 448. Nor had he any right of action growing out of his bankruptcy or lands administered therein that may be assigned or enforced in a court of equity. Neuberger v. Felis, 203 Ala. 142, 82 South. 172. That is to say, after his bankruptcy, W. A. Bagley had no property right or interest or right of action in the lands; was without interest in its sale or disposition by his creditors or the trustee holding the legal title for his creditors. The administration of the bankrupt estate had been closed, the lands sold and the proceeds administered, and thereafter W. A. Bagley had no property right or right of action on which to found a right of redemption of the land from the purchasers at trustee's sale or his vendee. In the disposition of the bankrupt's real properties, or interest therein, and in making conveyances thereof, a mutual mistake crept into said conveyances. This misdescription is shown by the pleading and evidence, and the conveyances are sought to be reformed. Such power rests in the inherent jurisdiction of a court of equity.

[4-6] By operation of law, the title to all of the property or interest in the lands of original complainant had vested in his trustee immediately upon his adjudication as a bankrupt, subject to the right of exemption provided by statute. After its sale by the trustee the creditors were not interested in the lands at the time of the filing of the original and the cross bill, since the trustee had made a complete settlement of his trust, including distribution of the purchase price of the land. The trustee, however, was a proper party, for the prayer of the cross-bill was for a correction in the description of his conveyance to Schwab. The interest of W. A. Bagley's vendees (the several Bagleys by reason of the deeds executed by the bankrupt before his adjudication) was concluded by the proceedings under the statute in the name of the trustee in bankruptcy against them, and the decree set aside their respective conveyances as fraudulent and void, and divested the interest or title of W. A. Bagley and his vendees in and to all of said lands, and declared the same to be vested in said trustee in bankruptcy. Hence, said vendees were not necessary parties to the cross-bill.

[7] If W. A. Bagley had properly listed said lands in his schedules upon or after filing his petition in bankruptcy, and had the trustee omitted or overlooked the sale of certain of them so scheduled, the title to the property unadministered may have reverted

to him, upon the closing of the bankrupt proceedings without its disposition by the trustee. Duncan v. Watson, supra; Watson v. Motley, 201 Ala. 25, 75 South. 147. However, such was or is not the case. The bankrupt Bagley did not list said real property or interest therein, having theretofore made fraudulent disposition of it (under the statute) to third parties. He could not thereafter have any interest in this real property founded on antecedent title or interest, nor could subsequent equities in his favor be rested on such title or interest.

[8, 9] The property of the complainant being vested in the trustee immediately upon his adjudication as a bankrupt and the appointment of a trustee, irrespective of the deed made to such trustee by the register in chancery (Duncan v. Watson, supra) the decree of the chancery court but cleared the title of the fraudulent conveyances, and confirmed such superior right and title in the trustee. The fact that a mutual mistake in the description of the property was contained in the several conveyances exhibited could not affect the real title of the trustee Hobbs and his vendees. This mutual mistake in the description of the two conveyances is averred in the cross-bill and shown by the evidence—the same being made in the deed from Hobbs as trustee to Jonas Schwab, in conveyance of the property of the bankrupt estate, and in the deed from Schwab to John W. and N. E. Bagley.

"Where the same mutual mistake has been repeated in each one of a chain of conveyances, under such circumstances as to entitle any one of the vendees to a reformation as against his immediate vendor, the equity will work back through all, and entitle the last vendee to a reformation against the original grantor." 6 Pom. Eq. Jur. § 678; Tillis v. Smith, 108 Ala. 264, 19 South. 374; Cross v. Woods, 92 South. —;[1] Jackson v. Lucas, 157 Ala. 551, 47 South. 224, 131 Am. St. Rep. 17; Greer v. Watson, 170 Ala. 334, 54 South. 487; Goulding Fert. Co. v. Blanchard, 178 Ala. 298, 59 South. 485; Woodlawn Realty & Dev. Co. v. Hawkins, 186 Ala. 234, 65 South. 183.

"Similarly, it has been held that if there is a mutual mistake in a mortgage in the description of property, and the same mistake is continued in the foreclosure decree and in the sheriff's deed to the foreclosure purchaser, equity will go back to the original transaction and reform the mortgage and decree as well as the deed, so as to make them conform to the intention of the parties concerned." 6 Pom. Eq. Jur. (1905) § 678.

[10] The appellant, filing his bill upon the theory that he had a right to "redeem," sought the aid of a court of equity in its exercise and enforcement. As the discharged bankrupt, he had no such right of redemption of property sold by his trustee in bankruptcy in the administration of said trust

estate. Had such right been given by statutes, that right would have been barred by lapse of time. The record shows that the sale was made by the trustee in bankruptcy to Schwab on August 10, 1909, and the bill was not filed until September 6, 1913, according to the testimony of W. A. Bagley. John W. Bagley, the cross-complainant, and N. E. Bagley, respondent in the cross-bill, purchased and had conveyance of this property from Schwab on February 28, 1913; and, according to the testimony of Schwab, paid him the full purchase price therefor—$1,500—at such time. The $100 recited in the written agreement (referred to in complainant's pleading and evidence) had nothing to do with redemption; it was due to the attorney for Schwab, incurred in the purchase of the property.

[11] The record shows that said alleged written promise of John W. Bagley (not of N. E. Bagley) to W. A. Bagley, purporting to give six months' time in which to "redeem" or purchase the land, was dated March 6, 1913. Complainant, as a witness, says he was given "six months from March 6th to redeem," and that he filed this bill on September 6, 1913. The testimony of John W. Bagley was to the effect that W. A. Bagley, at the time he was adjudicated a bankrupt, did not own all the lands mentioned and described in the deed from Schwab, and that an interest was owned by him (John W. Bagley) and his brothers and sister, but that "some of the land complainant owned entirely," that the written agreement in question was drawn and signed in the absence of complainant, and that the complainant nor any one for him did not offer to pay him the moneys he and his wife had paid in its purchase from Schwab. No pretense is made that this agreement was with the knowledge and consent of N. E. Bagley, or that she ever assented to or ratified the same.

If complainant in cross-bill had the conversation with a third party (H. L. Bagley) on September 5th, and stated that he was "willing to make a deed for all the land except" the old homestead (this was consistent with foregoing statement by him of the true state of the title), and that this statement was communicated to complainant, the fact remains that complainant did not find John W. Bagley at home on said day when an alleged effort was made to repay him the amount so paid by him to Schwab. This effort was not sufficient to warrant the relief prayed for, conceding that the bill was seasonably filed, for the fact remains that payment was not made, nor was it refused by John W. Bagley within the time indicated in the agreement.

[12] However, the title or interest in the lands, or a part thereof, was held jointly by John W. Bagley and his brothers and sister, by the statute of descents and distribution—

---

[1] 207 Ala. —.

the homestead tract, and a part by N. E. Bagley. The writing pertained to the whole title, and was signed only by John W. Bagley. The prayer of the bill was for cancellation of the Schwab deed to John W. and N. E. Bagley on payment of the amount paid by John W. Bagley to Schwab, ignoring the fact that one-half of the purchase money paid to Schwab was paid by and for. N. E. Bagley; that she received a deed from Schwab for a one-half interest therein. The fact is uncontroverted that W. A. Bagley had only an undivided interest in a part of the lands when he was adjudicated a bankrupt. Conceding, without deciding, there was a sufficient consideration for the agreement, specific performance would have required the enforcement of the contract involving the assent of one not a party to the contract, and this may not be done without the assent of such party not bound by the .contract. Roquemore & Hall v. Mitchell Bros., 167 Ala. 475, 481, 52 South. 423, 140 Am. St. Rep. 52; Jackson Lbr. Co. v. Bass, 181 Ala. 169, 61 South. 271; Citronelle Turp. Co. v. Buhlig, 184 Ala. 404, 63 South. 951; Penney v. Norton, 202 Ala. 690, 81 South. 666; Cross v. Woods, supra. The record fails to disclose the consent of N. E. Bagley to the agreement; the contrary is shown. Hence there could be no specific performance.

On whatever phase complainant may seek to rest his right—of redemption or repurchase—we find no error in the decree from which the appeal is prosecuted. It is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.