(123 So. 210)

GALLILEE BAPTIST CHURCH v. PALLILLA et al. (6 Div. 191.)

Supreme Court of Alabama. May 30, 1929.

As Modified, on Denial of Rehearing.
June 27, 1929.

684

Hugh A. Locke and E. M. Creel, both of Birmingham, for appellees.

BROWN, J. The complainant, claiming to be in the peaceable possession of the property conveyed to it by the respondent Pallilla on the 25th day of February, 1919, filed the original bill against appellees, seeking to cancel as a cloud on its title two certain mortgages, one dated February 25, 1919, purporting to secure an indebtedness of $625 due Stephano Pallilla, and the other which purports to have been given in lieu of the first is dated December 11, 1919, and expresses an indebtedness of $525 due to Pallilla, and the foreclosure deeds executed thereunder; said mortgages having been before their foreclosure transferred to the respondent George Lo Bue, and by him foreclosed, he purchasing at the foreclosure sale; and a quitclaim deed purporting to have been executed by the appellant to Pallilla for the purpose of correcting the deed executed by Pallilla to complainant, on the ground that the persons assuming to act for and in behalf of the complainant were without authority; complainant offering to do equity, and praying in the alternative to be allowed to redeem in the event it is held that said mortgages, or either of them, and the foreclosure thereunder, have any validity.

The defendants, appellees here, answered, making their answer a cross-bill, alleging therein, in substance, that subsequent to the execution of the deed to appellant of date February 25, 1919, conveying to it said lot,

Harsh & Harsh, of Birmingham, for appellant.

in dimensions 100 feet by 50 feet, said Pallilla for a consideration of $1,000 sold and conveyed a part of said lot, 35 feet by 50 feet, to the defendant Guiseppe Lo Bue. The cross-bill further avers: "That the deed executed to the complainant, Gallilee Baptist Church, by Stephano Pallilla on the 25th of February, 1919, and the purchase-money mortgage given back to respondent, Pallilla, by complainant, were prepared by an attorney representing the Gallilee Baptist Church; that the description in said deed and mortgage was erroneous in that it was the intention of the grantor therein that only the south 65 feet of said 100 foot strip of land be sold, and it was the intention of the grantee that it purchase only 65 feet of said 100-foot strip of land; that the grantor was unable to read or write the English language, and that he did not discover the error referred to until after said deed and mortgage had been recorded." That the mistake in the description of the property was not discovered by Pallilla until he undertook to sell the north 35-foot strip of the property to Mrs. Lo Bue, and thereupon the complainant agreed to correct the mistake, etc.

The cross-bill prays, among other things, for a reformation of the deed to complainant and the mortgage of December 11, 1919, purporting to have been executed by the complainant through and by Smith, as trustee, and Edwards as pastor, to Pallilla.

The complainant, in its answer to the cross-bill, incorporated grounds of demurrer questioning its equity, the sufficiency of its averments to make a case for reformation, and asserting that it discloses that the defendants have come into equity with unclean hands. The answer as to matters of fact denies the averments of the cross-bill as to the mutuality of the alleged mistake in the description of the property, and alleges fraud and collusion between Edwards, the pastor of the church, and Pallilla, to deprive the complainant of a part of the property conveyed by the deed of February 25, 1925.

█ The ground on which a court of equity assumes jurisdiction to reform written instruments is that through mutual mistake of the parties, mistake on the part of the scrivener, or fraud of the party against whom relief is sought, unmixed with negligence of the party seeking relief, the instrument does not express the intention of the parties. Burch et ux. v. Driver, 205 Ala. 659, 88 So. 902; Bagley v. Bagley et al., 206 Ala. 232, 89 So. 739; 23 R. C. L. 320, § 14. .

██ We are of opinion the averments of the cross-bill are sufficient to authorize a reformation of the deed to the complainant, so as to make it conform to the intention of the parties; and the grounds of demurrer questioning the equity of the bill and the sufficiency of the averments to authorize reformation were not well taken. Nor can the act of Lo Bue in attempting a foreclosure of

both of the alleged mortgages, if unjust, be visited on Mrs. Lo Bue.

█ Nor was it necessary for the respondent Mrs. Lo Bue to surrender her possession of the property as a prerequisite to her right to invoke the jurisdiction of the court. She had purchased after the attempted correction of the alleged mistake, and though the quitclaim deed was held void in the action of ejectment, this did not destroy her right to assert her equitable title' to the property. Coleman v. Stewart, 170 Ala. 255, 53 So. 1020. We are therefore of opinion that the demurrers to the cross-bill were properly overruled.

██ The averments of the cross-bill imposed on the defendants, seeking to reform, the burden of showing that the complainant church only intended to purchase the south 65 feet of the lot, and if this was not shown to the reasonable satisfaction of the court, the effect of the decree reforming the deed was not to make it conform to the intention of the parties, but to make a new contract for them. It is well settled that while a court of equity will, in a proper case, reform an instrument, it will not undertake to make a new contract into which the parties did not intend to enter. Hunt v. Rhodes, 1 Pet. 1, 7 L. Ed. 27; Price v. Cutts, 29 Ga. 142, 74 Am. Dec. 52; 23 R. C. L. 309, § 2.

█ One of appellant's contentions is that the appellees failed to meet and carry the burden of proof assumed by the averments of the cross-bill.

The complainant adduced the testimony of several members of the board of trustees and 13 members of the congregation, whose testimony goes to show that it was understood from the beginning that the purchase was of the entire lot as described in the deed from Pallilla to the church, and that they never attended any meeting in which notice was given of a purpose to deed back any part of the lot in correction of the original deed, and this was after Edwards, who was pastor at the time of the purchase, left the church. Many of these witnesses testified that they attended the church regularly, and that the resolutions appended to the quitclaim deed were, so far as they knew, never brought before the congregation or board of trustees. The minutes of the church conferences covering the period of the transaction were offered by complainant, and the only reference therein to the purchase of the property is found in the minutes of January 29, 1919, to the effect that motion was made and carried "that the banking committee draw $100.00 to pay on lot. Mo. Carried."

And the minutes of February 24, 1919, show a motion made and carried "that the pastor take charge and see the architect, and the building be 36 feet wide and 48 feet long."

The evidence is without dispute that the negotiation for the purchase of the property was conducted by Edwards, the pastor of the

church, who assumed to act for it, and his testimony, though in some respects contradictory, tends to show that the purchase was of the south 65 feet of the lot, and that this fact was stated by him to the congregation. Corroborating his testimony, the evidence is without dispute that about the time of the purchase this part of the lot was surveyed by a civil engineer and staked off; that on the north 35 feet of the lot was a small building occupied as a store by a party who is referred to as "Mike"; that thereafter this part of the lot was sold by Pallilla to Mrs. Lo Bue; that she thereafter occupied and used the property for a period of six years without being interrupted and without any claim for rent by the church; that she assessed and paid the taxes thereon; and that the other portion of the lot was designated on the tax records as church property.

The evidence further shows that at about the time Mrs. Lo Bue purchased, Edwards, and others connected with the church, recognized the error in the description of the property and attempted to correct the deed by giving a quitclaim deed.

The testimony was taken in open court, and the chancellor had the opportunity to see and observe the demeanor of the witness, and after a careful consideration of the evidence, we are not able to say that his conclusion that the deed should be corrected and reformed is not well grounded.

On the appeal in the ejectment suit, it was held that the evidence offered in that case showed that the parties assuming to act for the church in the execution of the quitclaim deed had no authority to execute the deed for and in the name of the church, and therefore, in the light of the evidence, it was without legal effect upon the title. Pallilla et al. v. Galilee Baptist Church, 215 Ala. 667, 112 So. 134.

For the same reason we are of opinion that the mortgage purporting to secure the balance of the purchase money and the subsequent mortgage intended by the parties who signed it as a correction of the first must be held invalid.

However, these alleged mortgages are not void on their face, but their invalidity must be and is shown by evidence extrinsic of the papers themselves, and the complainant is entitled to have them canceled as a cloud on its title, upon paying whatever balance may be due on the purchase money of the property. Hayes v. Southern Home Building & Loan Ass'n, 124 Ala. 663, 26 So. 527, 82 Am. St. Rep. 216; Grider v. American Freehold Land & Mortgage Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58.

The proof is without dispute that the price agreed to be paid for the property was $2,-500. Of that amount whatever was due and unpaid on the Bethea mortgage was assumed by the complainant, and this has been paid; but it appears that some part of the mortgage debt to Bethea had been paid before this assumption of the debt by complainant. The matter of ascertaining the amount of the unpaid purchase money is left for ascertainment by the trial court.

If payments, other than those made on the Bethea mortgage, have been made, said payments should be recognized by the court or register, if a reference is ordered, in ascertaining the amount due and to be paid as a condition precedent to a decree canceling the mortgages and the foreclosure deeds thereunder.

The decree of the circuit court in so far as it corrects and reforms the deed from Pallilla to the complainant is affirmed.

That part of the decree adjudging that the alleged mortgages create a vendor's lien on the property, and allowing the complainant to redeem, is reversed, and the cause is remanded. One-half of the costs of the appeal will be taxed against the appellant and the remainder against the appellee George Lo Bue.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.