# Mullen *v.* Walton, Admr. etc., *et al.*

*Bill in Equity to have enforced an Express Trust and for an Accounting.*

1. *Laches; constituents thereof.*—The laches which will deprive a party from claiming equitable relief is the intentional failure to resist the assertion of an adverse right; and, therefore, laches cannot be imputed to one who is ignorant of his rights, and for that reason alone fails to assert them.

2. *Enforcement of express trust; when laches not shown to exist; decedent's estate.*—A testator who left surviving him a wife and a minor child 11 years old, provided in his will that after a specific allowance to the wife, the balance of his estate should be divided equally between his wife and child, and also provided in the will that his wife should have the care, maintenance and education of his child and for that purpose he gave to the wife the control and management of all the moneys of his child under his will. The child was kept in ignorance of the provisions of her father's will, and knew nothing of the creation of the trust for her benefit. At different times the wife of the testator admitted her obligations to the child. The wife of the testator induced the child to go and live in a distant State with her aunts, and at no time did the wife make any provisions or give any moneys to the child or her aunts for her benefit. 37 years after the probate of the will of the testator, the wife died, leaving a substantial estate, and left a will which was invalid because not witnessed. By this will she bequeathed $1500 to said child as "her rightful portion." After the death of the wife, the child, upon investigation, discovered for the first time the provisions of her father's will, and then a few months after the ascertainment of the facts filed a bill in chancery for the establishment and enforcement of the trust created by her father's will for her benefit and for an accounting. *Held*: that there was by the father's will created a trust for the benefit of the child, and the surviving wife was the trustee, and that by reason of the child having been kept in ignorance of her rights, she was not guilty of laches which would deprive her from seeking in a court of equity the establishment and enforcemen: of the express trust in her behalf as against the estate of the deceased wife.

APPEAL from the Chancery Court of Chambers.

Heard before the HON. RICHARD B. KELLY.

The bill in this case was filed on July 15th, 1903, by the appellant, Charlotte Ewell Mullen, against J. M. Walton, as administrator of the estate of Martha A. Ewell, deceased, and the heirs of said Martha A. Ewell. The following facts were averred in the bill: Complainant was the only daughter of J. B. Ewell, deceased, who died in Waco, Texas, in October, 1865, leaving surviving him his second wife, Martha A. Ewell, and the complainant, who was then a child of 11 years of age. Mrs. Martha A. Ewell, the widow of J. B. Ewell, was the stepmother of the complainant. At the time of J. B. Ewell's death, he was a prosperous merchant and left an estate which was of value not less than $6,000, and he owed no debts. J. B. Ewell, the father of complainant, left a last will and testament which was admitted to probate in McLenan County, Texas on Oct. 30th, 1865. A copy of this will was attached as exhibit "A" to the bill. After bequeathing to Martha A. Ewell, the household and kitchen furniture, it was provided in said will that the first $2,000 realized from the estate should be retained by the said Martha A. Ewell, and that the remainder of the estate of complainant's father, after deducting said $2,000, should be equally divided between said Martha A. Ewell and complainant, and to this end it was provided in said will that said Martha A. Ewell should take control of all the testator's property and effects, and hold the same for the purpose of carrying out the provisions of his will. One of the items of said will was in words and figures as follows: "It is my will that my wife have the care, raising and education of my said daughter as long as she desires the same, and I leave my wife for that purpose the care, control and management of all monies of my said daughter under this will, and in case of my said wife's death, or any other cause, my said daughter has to seek another home, then it is my wish that my two sisters, Mildred E. and Fannie B. Ewell, of Baltimore, Maryland, have the care of educating my said daughter Lotty and have the care and management of all the effects given her under this will;" etc. In said will Martha

A. Ewell was expressly exempted from giving bond or making reports to any courts as executrix of said will, or as guardian of complainant.

It was averred in the bill that under the provisions of the will of complainant's father, there was created an express trust in behalf of complainant in and to one-half of all of J. B. Ewell's estate above $2,000, which, at the time the property was reduced to money by sales, to-wit in the year 1867, amounted to a trust fund of $2,000, and that said Martha A. Ewell was the trustee. The bill then avers the following further facts: The complainant has never received any benefits of said trust thus created by her father for her benefit, nor has she ever received any part or parcel of said trust fund of trust property. In January, 1867, complainant was persuaded by her said step-mother, Martha A. Ewell to go and live with her aunts in Baltimore, Maryland. Said Martha A. Ewell at the same time promising to send her money as soon as she got the affairs of the estate settled. The aunts of complainant paid the expenses of her maintenance and support and schooling, and have never received any money or property from said Martha A. Ewell; that in 1902, said Martha A. Ewell died, leaving an estate which was appraised during the proceedings of the administration thereof at over $10,000.

After complainant went to live with her said aunts, said Martha A. Ewell wrote her about being unfortunate in the loss of large sums of money which she had loaned out, and several times prior to her death said Martha A. Ewell expressed in her letters to complainant an obligation to her to let her have the whole or a large interest in the property of said Martha A. Ewell when she died.

The statement contained in one of these letters is copied in the opinion. At the time of the death of complainant's father, complainant being only 11 years old, she was too young to understand the importance of posting herself as to the provisions of her father's will in regard to her, and from that time on to a few months within the filing of the present bill she was kept in ignorance of the provisions of said will, and knew nothing about the existence of a trust in her favor, which was to be admin-

istered by said Martha. A. Ewell. When the said Martha A. Ewell died in October, 1902, she left an unwitnessed autograph will, in which she bequeathed to complainant $1500 as "her rightful portion," and directed her executor to see that she obtained such portion. Such will being unwitnessed, was never probated.

After having seen said will, the complainant, on the advice of her attorney, obtained a copy of her father's will, and then learned for the first time of its provisions, and the present bill was filed within a few months after the ascertaining of such information. The prayer of the bill was as follows: "May it further please your Honor to render a decree in behalf of oratrix, establishing the creation of a trust in favor of oratrix under her said father's will, as well as the non-performance or breach of the same by the said trustee, Martha A. Ewell, deceased, and declaring a lien in favor of oratrix upon all the assets of the estate of the said Martha A. Ewell for the enforcement of said trust by realizing to oratrix the principal of said trust fund, as well as legal interest and profits thereon; and that it be referred to the register to ascertain by an accounting before him the exact amount of said trust fund as nearly as may be, which came into the hands of said Martha A. Ewell, deceased, as well as the interest and profits for the use and retention of same with which her estate is to be charged, to the end that oratrix may recover out of the estate of said Martha A. Ewell the amount of principal and interest which is justly due and owing to her; and that said J. M. Walton, as such administrator, be decreed to pay to orator the sum so found to be due out of the assets and proceeds of said estate." There was also a prayer for general relief. The respondents demurred to the bill upon the following grounds: 1. Said bill shows on its face that it is one for the enforcement of a stale claim. 2. Said bill shows on its face that the complainant cannot recover in said cause because of her laches in seeking the enforcement of her alleged rights. 3. Said bill shows long acquiescence by the complainant in the alleged wrong done her, and yet it fails to show that she could not by diligence sooner discovered her rights under

her father's will. 4. The bill shows that the will of the complainant's father was admitted to probate in the proper county and that by proper diligence on her part she could have seen said will and could have discovered her rights thereunder. 5. The bill shows that the will of complainant's father, upon which is based the claim her bill is filed to recover, was probated Oct. 30th, 1865, and recorded on the public records of McLenan Co., Texas, more than 42 years before this bill was filed, does not aver nor show any fraud practiced upon complainant by M. A. Ewell, nor any recognition by M. A. Ewell of a trust created and imposed on her by said will, but avers mere ignorance of her right on the part of complainant, without excusing or explaining its unreasonable continuance.

The respondent also moved to dismiss the bill for the want of equity. Upon the submission of the cause upon the motion to dismiss and the demurrers, the chancellor rendered a decree sustaining each of them. From this decree the complainant appeals and assigns as the rendition thereof as error.

ARMSTEAD BROWN, for appellant.—A *cestui que trust* who does not actually know, is not be affected with knowledge of a breach of trust, because he might by inquiry, have ascertained the fact, for it is not his duty, but that of the trustee, to see that the trust fund is in proper state.—2d edition 18th Am. & Eng. Ency. of Law, p. 103; *Holt v. Wilson*, 75 Ala. 58-66-67; 2nd Pomeroy, Eq. Juris. p. 663. "Lapse of time is no bar to the enforcement of an express trust unless it is clearly repudiated, and this is brought home to the knowledge of the *cestui que trust,* so as to require him to act upon a clearly asserted adverse claim."—2nd Perry on Trusts, Sec. 863; *Hastie v. Aiken*, 67 Ala. 313; 2nd Pomeroys Eq. Juris. sec. 1083; *Nettle v. Nettles*, 67 Ala. 599; 1 L. R. A., 328 330; 8 L. R. A., 649; 63 Am. Dec., 475; Angell on Limitations, sec. 166; 172; *McCarthy v. McCarthy*, 74 Ala. 555. The constructive notice afforded by the probate of the will, did not charge the appellant with a knowledge of her rights.—*Haney v. Legg*, 129 Ala. 625; *McCarthy v.*

[Mullen v. Walton, Admr. etc., *et al.*]

*McCarthy, supra.* What it takes to constitute laches, is
well stated by Tyson J. in *Haney v. Legg, supra,* p. 625,
as follows: "Staleness or *laches* is founded upon ac-
quiescence in the assertion of adverse rights and unrea-
sonable delay on complainant's part in not asserting
her own, to the prejudice of the adverse party"—citing
numerous authorities. See also 18th Am. & Eng. Ency.
Law., 102 (2nd ed.) ; *Cowan v. Sapp.* 81 Ala. 525.

OLIVER & THIGPEN and BARNES & DUKE, *contra.*—The
complainant has been guilty of fatal laches in failing to
seek the enforcement of her alleged rights for more than
forty-two years after they accrued, for more than thirty-
six years after the alleged breach of the trust occurred,
and for more than ten years after she, by the allegations
of her bill, in paragraph 5, acquired knowledge of the
breach of trust, and in waiting until the lips of Martha
A. Ewell have been closed in death and it is no longer
possible to secure her testimony concerning the breach
of trust with which she is charged.—*Gordon v. Ross,* 63
Ala. 363 ; *James v. James,* 55 Ala. 525 ; *Martin v. Talley,*
72 Ala. 23 ; *Nettles v. Nettles,* 67 Ala. 599 ; *Scruggs v.
Decatur M. & Z. Co.,* 86 Ala. 192 5 South. 440. The bill
on its face shows that the claim sought to be enforced
is prima facie within the operation of the rule against
stale demands, and vague averments are used to seek to
withdraw it from same.—3 Brickell, p. 366, Sec. 464 ;
*Philippi v. Philippi,* 61 Ala. 41 ; *Bercy v. Lavretta,* 63
Ala. 374.

SIMPSON, J.—The bill in this case was filed by the
appellant against appellee, for the purpose of forcing an
accounting and settlement of an express trust created
by the will of appellant's father, under which appellant's
step-mother (appellee's intestate) became trustee, more
than twenty years before the filing of the bill, when ap-
pellant was only eleven years of age.

The case comes up on the decree of the chancery court,
sustaining demurrers to the bill and granting the motion
to dismiss for want of equity, and the only question
raised by the assignments of error is whether or not the

appellant has been guilty of *laches*, as bars her right to relief.

The decisions of this court are very strong on the doctrine of prescription, holding that the period of twenty years is one "beyond which human transactions shall not be open to judicial investigation," and this period of repose has been made applicable to all kinds of pecuniary obligations, including fiduciary demands in favor of *cestuis que trust.*—*McArthur v. Carrie's Admr.*, 32 Ala. 75, 88; *Garrett v. Garrett*, 69 Ala. 429; *Semple v. Glenn*, 91 Ala. 245, 261, et seq.

This presumption, when applied to the liability of trustees, or others occupying fiduciary positions, requires that there shall have been no recognition of the trust within the period of twenty years.—*Semple v. Glenn*, *supra*.

In the case at bar the bill alleges that, during the year 1892, the appellees' intestate wrote a letter to appellant in which she stated (referring to her property) "I shall leave it all to you, because I lost most all of that $4,000, when you were a child, part of which your father intended for you, and it will only be right for you to have it when I am done with this world."

We are not left to this expression for information as to what the trust was, for the will of appellant's father shows a clear trust, and we hold that this reference to it is a clear acknowledgment that, at that time, the obligations of the trust had not been fulfilled, and, taken in connection with this acknowledgment, the clause in the attempted autograph will of the step-mother giving to appellant $1500.00, "her rightful portion," amounts to an acknowledgment that the obligation was still unfulfilled.

It has been said that the *laches* which will deprive a party of claiming equitable relief is the "intentional failure to resist the assertion of an adverse right" and that consequently there cannot be acquiescence, "without knowledge on the part of the person of the infringement of his legal rights."—18 Am. & Eng. Ency. Law, (2nd ed.) p. p. 99, 113 and notes; Pomeroy's Eq. Juri. § 817;

*Hancy v. Legg, et al,* 129 Ala. 619, 625-6; *James v. James,* 55 Ala. 525, 533.

Where there is added to that ignorance, the additional element of fraudulent concealment, by the party sought to be charged, from the party seeking relief, of the facts constituting the rights claimed, it would seem to be a strange perversion of a wise principle of law, to allow the party guilty of the fraud to profit by his own wrong, and to presume that the trust had been settled when the evidence shows that the trustee was concealing it, with the determination of not settling it, and that the *cestui que trust* had been kept in ignorance of his rights, by the act of the other party.

"No lapse of time, no delay in bringing suit, however long, will defeat the remedy, provided the injured party was, during all this interval, ignorant of the fraud. The duty to commence proceedings can arise only upon his discovery of the fraud.—Pomeroy's Eq. Juri. (2nd ed.) Vol. 2, § § 917, 965; *Kilbourn v. Sunderland,* 130 U. S. 505, 518-19; *Kirby v. Lake Shore & M. S. R. R.* 120 U. S. 130, 136.

It has been well said by the Supreme Court of the United States, that, "to hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure.—*Rosenthall v. Walker, assignee,* 111 U. S. 185, 190.

This principle of equity has been made applicable to the statute of limitations, where there was no statutory provision for the same, but our legislature has made it applicable to the statute of limitations.—Code of 1896, § 2813.

While the statute is not strictly applicable to the equitable doctrine of *laches,* stale demands, or prescription, and while there is a difference in the theory upon which the statute and the equitable doctrine operate, yet the statute shows the legislative mind, and the cases are analagous so far as this principle is concerned. Accordingly we find that this principle has been applied to the

equitable presumption.—Story's Equity Pleading, (10th ed.) § 813, note 1; *Moddaugh et al v. Fox, et al,* 135 Ill. 344, 358; *Penn v. Folger,* 182 Ill. 77, 109.

In a case where the widow had destroyed the marriage contract, which was not recorded, and failed to disclose its existence for more than twenty years, this court held that the heirs were not guilty of *laches,* but had one year after the discovery of the fraud to bring suit,—*Holt v. Wilson,* 75 Ala. 58, 66, and the court say, "When this (fraud) is coupled with the existence of a fiduciary relation between the parties, rendering disclosure both the moral and legal duty of the trustee, a court of conscience can scarcely preserve its self respect and, at the same time, hesitate for one moment to grant relief."—p. 66-7 *Ib.*

The infancy and non-residence of the complainant, in that case, and other circumstances make it, in several respects, analagous to the case now under consideration. See also same case, 83 Ala. 528, 539.

The only remaining question is, whether or not the constructive notice from the recording of her father's will in Texas, was sufficient to put the appellant on inquiry as to her rights? We think not.

The court has said in another case, "We do not think, however, that the constructive notice of the nature of M's. possession, as imported by these deeds, should charge the complainant with a knowledge of her rights. The blind ignorance in which she seems to have been kept, by the fraudulent conduct of her trustee, was sufficient to drown all suspicion of unfairness, and stupefy the activity of inquiry."—*McCarthy v. McCarthy,* 74 Ala. 555.

In the case, under consideration, we hold that the facts, as alleged in the bill, that appellant, at the tender age of eleven, was sent away into another State, where she was raised by her aunts, under the impression, made by her step-mother, that there was nothing due her from her father's estate, but that the step-mother was going to provide for her out of her own estate, was enough to "stupefy the activity of inquiry," and she was not chargeable with notice by reason of the record in Texas.

[Morey v. Monk.]

The decree of the court is reversed and a decree will be here entered by this court overruling the demurrers to the bill and the motion to dismiss for the want of equity, and allowing the respondents sixty days within which to answer.

McCLELLAN, C.J., TYSON and ANDERSON, J.J., concurring.