### In re BARTON'S ESTATE et al.

(District Court, W. D. Arkansas, Texarkana Division. April 23, 1906.)

**1. BANKRUPTCY—REOPENING ESTATE.**

Where bankrupt partners were refused a discharge after the estate in bankruptcy had been closed, on the ground that they had in their possession several thousand dollars in money which they did not schedule, and there is evidence tending to show that they have since invested such money in property in the names of other persons, creditors are entitled to have the estate reopened, to the end that proceedings may be instituted to recover such property for their benefit.

**2. SAME—PROCEEDINGS FOR SECOND ADJUDICATION.**

A bond given by bankrupts on an appeal from an order refusing them a discharge is merely one for costs, and does not suspend or affect the right of creditors to institute proceedings to have them adjudicated bankrupts a second time, on the ground of the commission of a new act of bankruptcy; and such proceedings cannot be maintained after the lapse of more than four months from the date of such act.

**3. SAME—RIGHT TO SECOND ADJUDICATION—AFTER-ACQUIRED PROPERTY.**

Creditors who have proved their claims in bankruptcy are not entitled, while the estate is still in process of administration, but after the bankrupt has been refused a discharge, to maintain proceedings to have him adjudged a bankrupt a second time on account of the same debts, on the ground that he acquired property after the first adjudication, which he is alleged to have conveyed in fraud of his creditors.

In Bankruptcy. On exceptions to master's report.

McRae & Tompkins, for the creditors.

Hardage & Wilson and J. H. Crawford, for defendants.

ROGERS, District Judge. A general outline of this case will be found in the case of Barton Bros. v. Texas Produce Co., 14 Am. Bankr. Rep. 502, 136 Fed. 355. The application now is two fold in its nature—first, to reopen the bankruptcy case of Barton Bros.; second, to readjudicate William P. Barton, Jr., and Ross J. Barton, members of the firm of Barton Bros., bankrupts. The master has reported in favor of both. Exceptions have been filed to both findings in his report. These exceptions are now to be considered in their order.

Should the case of Barton Bros. be reopened? The District Court has found, and the Circuit Court of Appeals, supra, has affirmed the findings of the District Court, to the effect that at the time the estate of Barton Bros. was closed the bankrupts, William P. Barton, Jr., and Ross J. Barton, had not accounted for about $8,000 in money of the assets of Barton Bros., and their discharge was refused on that ground. At the time the estate was closed, William P. Barton, Jr., and Ross J. Barton had not filed their application for a discharge, but there was an understanding with their attorney that they would not file such applications.

They did not file their application for discharge until on the very day their father died, and a new estate descended to them. The question now is should the order be vacated? It has been held that the bankrupts had the money. The evidence tends to show that they have reinvested it in other property in the names of other persons. The creditors have a right to it, or they have a right to pursue it in this court through a trustee. It is true individual creditors may, by appropriate suits, now that a discharge has been refused to the bankrupts, pursue their estate in the state courts, but they ought not, under the circumstances, by an order closing the estate, be deprived of any right or remedy secured to them under the bankrupt law.

The objection to the finding of the master as to the first paragraph of the petition is therefore overruled, and the report of the master approved. An order will be entered reopening the estate, and referring it again to the referee, who is directed to proceed to its further administration as the bankrupt law directs.

2. Should William P. Barton, Jr., and Ross J. Barton be adjudged bankrupts a second time, so that after-acquired property can be reached and administered through the bankrupt court? The record discloses that after William P. Barton, Jr., and Ross J. Barton were adjudged bankrupts, and their estate closed, their father died, leaving a will, by virtue of which his personal estate and a life estate in his realty was devised to his widow, with remainder in the realty to his children, among whom were the said William P. Barton, Jr., and Ross J. Barton. William P. Barton, Jr., and Ross J. Barton, hereafter called the bankrupts, were adjudged bankrupts November 28, 1902. Their estate was closed October 1, 1903. On October 6, 1903, their father died, and on the same day they filed their application for discharge. Their application for discharge was heard and refused by the district judge on May 13, 1904. On May 24, 1904, they conveyed all their interest in their father's estate to their mother and sister, and immediately thereafter filed a supersedeas bond, and appealed from the judgment of the District Court refusing them their discharge, and on April 14, 1905, following, the Court of Appeals affirmed the judgment of the District Court denying them a discharge. The petitioning creditors, who now ask that said bankrupts be adjudged bankrupts a second time, because their deed of May 24, 1904, to their mother and sister, was executed with the fraudulent purpose of cheating, hindering, and delaying their creditors, and to prevent their creditors from subjecting the estate inherited from their father to the payment of their debts, had proven their claims as creditors against the said bankrupts in the former proceeding in bankruptcy. Upon the reopening of the estate of the Barton Bros., a trustee may be selected in the mode pointed out by section 44 of the bankrupt law of July 1, 1898 (chapter 541, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]), who will have all the powers that a trustee in bankruptcy can acquire for the purpose of reducing to possession any estate which has not been duly administered, and which belonged to the bankrupts at the time of their former adjudication. The bankruptcy case is therefore open, and the bankrupts themselves have been denied their discharge. Section 11a of the bank-

rupt law (30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]), reads as
follows:

"A suit which is founded upon a claim from which a discharge would be
a release, and which is pending against a person at the time of the filing of
a petition against him, shall be stayed after an adjudication or the dis-
missal of the petition; if such person is adjudged a bankrupt, such action
may be further stayed until twelve months after the date of such adjudica-
tion, or, if within that time such person applies for a discharge, then until
the question of such discharge is determined."

It appears from this section that where an application for discharge
which was filed in apt time is pending, no suit can be brought against
a bankrupt until the discharge is either granted or refused. It does
not appear that any such suit has been stayed by any order of any
court, and by operation of law, since the discharge was refused, any
creditor has, from the date of the refusal of their discharge, had the
right to institute and prosecute any suits against them as to after-
acquired property which they might have instituted and prosecuted
had they never been adjudicated bankrupts. In short, as to creditors
existing before the bankruptcy, the trustee in the former bankruptcy
proceeding might pursue any property the bankrupts had at the date
of their adjudication, and any existing creditor at the date of their ad-
judication may pursue, in his own right, any after-acquired property
in any court of competent jurisdiction. The creditor existing prior
to the adjudication, therefore, had all the advantages and rights of
the bankrupt court, through the intervention of the trustee, for the
purpose of reaching property owned by the bankrupts at the date of
their adjudication, and, as to after-acquired property, such creditors
have the right to proceed in their own right in any court of competent
jurisdiction to reach any after-acquired property which the bankrupts
may possess, or which the bankrupts may have acquired since their
adjudication, and fraudulently conveyed. So far, therefore, as credit-
ors having debts that were contracted before the adjudication in bank-
ruptcy was had is concerned, nothing is to be effected by a second ad-
judication in bankruptcy. Having proven their claims against the
bankrupts' estate, they could not sue pending the proceeding for dis-
charge, but, when the discharge was refused, their right to sue instant-
ly revived as to after-acquired property, and on the reopening of the
bankrupts' estate and on the appointment of a trustee he acquired the
right to pursue any previously acquired property belonging to the
bankrupts' estate not already duly administered. At all events, the
same creditors, while the bankrupts' estate is in process of administra-
tion, cannot be permitted, on account of the same debts already pro-
bated against the estate of the bankrupts, to have the bankrupts ad-
judicated bankrupts a second time. As stated, the petitioning creditors
can now go into any court of competent jurisdiction to reach any after-
acquired property (that is, property acquired after their adjudication
in bankruptcy) without regard to the proceedings in progress in the
bankrupt court. This is so, because no after-acquired property of the
bankrupt passed to his trustee (Loveland on Bankruptcy [2d Ed.] p.
416, note 270, and cases there cited), and the trustee had nothing
whatever to do with it, or, if at all, certainly not until the discharge

was refused. But, if this were not so, the contention of the petitioning creditors to the effect that the bankrupts should be adjudicated bankrupts a second time, on the ground that the conveyance to their mother and sister was an act of bankruptcy, and that the creditors could not proceed against them a second time in bankruptcy because of their appeal from the order refusing them a discharge in the first bankruptcy proceeding, is not tenable, for the reason that the conveyance to the mother and sister was made on May 24, 1904, and the filing of the petition to readjudicate them bankrupts was not filed until July 19, 1905—more than a year after the conveyance was made—and the supersedeas had no application at all to the alleged act of bankruptcy in conveying their after-acquired property to their mother and sister. The two proceedings were entirely separate and distinct. The supersedeas bond was in the nature of a cost bond. There was nothing to supersede. The judgment of the court was simply a denial of their discharge. A denial of their discharge could not be superseded. Neither the parties nor the subject-matter were the same. Only one of the petitioning creditors in this cause was a party to the specification of objections to the discharge. The objections to the discharge were on the ground that they had concealed $8,000 in cash, and the petition to have the bankrupts adjudicated bankrupts a second time was on account of the deed made by the bankrupts to their mother and sister of property acquired after their adjudication in bankruptcy; so that in every respect the two proceedings were entirely different. The four-month statute, therefore, began to run against all creditors immediately upon the recording of the deed of May 24, 1904, and was not suspended by reason of the appeal from the judgment of the court denying the bankrupts their discharge.

The court has purposely refrained from deciding in this case whether the trustee to be appointed upon the reopening of this case can (the bankrupts having been refused their discharge) maintain a suit in any court to recover property acquired by the bankrupts after their adjudication in bankruptcy. That is an open question, and one as to which the court has not been able to find any authority. The exceptions to the master's report as to the second paragraph of the petition, praying that the bankrupts may be adjudicated bankrupts a second time, are sustained, and the prayer of the petition in that respect is denied. The costs in this case will be taxed against the bankrupts.