# Duncan, *et al. v.* Watson.

### Ejectment.

(Decided June 30, 1916.  Rehearing denied December 30, 1916.
73 South. 448.)

1. **Evidence; Documentary; Bankruptcy Proceeding.**—Under the provision of § 3983, Code 1907, a petition to open a bankruptcy estate, the order referring the same to a referee, the application for a decree opening the estate, the decree, and a properly certified decree of discharge were admissible in evidence in an ejectment suit brought by a trustee in bankruptcy to recover an undivided interest in an estate.

2. **Same.**—Under said section the proceedings in bankruptcy after the reopening of the bankrupt estate should be properly certified by the referee

[Duncan, et al. v. Watson.]

in bankruptcy before they are admissible in evidence in a subsequent suit in ejectment touching the estate.

3. **Bankruptcy; Reopening Estate; Ground.**—The court should reopen an estate of a bankrupt upon timely application whenever it shall be alleged and proven that the estate was closed before full administration. (U. S. Comp. St. 1913, § 9586.)

4. **Same; Petition; Limitation.**—An application to reopen a bankrupt's estate under U. S. Comp. Statutes 1913, § 9586, was filed in time, though more than two years had elapsed since the estate was closed, where the petition was filed immediately after the filing and recording of an alleged fraudulent conveyance from the bankrupt to his wife, and to his attorney, and bankruptcy proceedings were had in a part of the state some distance from the place where the lands were conveyed; and this is true notwithstanding the provisions of § 9595, U. S. Comp St. 1913.

5. **Evidence; Best and Secondary; Family History.**—The testimony of a witness as to the marriage of his aunt and of the birth of a child, and of the death of the aunt and the child, which events occurred before the birth or personal recollection of the witness, based on the records of the family Bible, was open to the objection that the Bible was the best evidence.

6. **Appeal and Error; Admission of Evidence; Objection.**—Where neither the objection to the evidence, nor the motion to exclude specified that the evidence was secondary and that the best was obtainable, the evidence being otherwise competent and relevant, error cannot be predicated on the admission of such evidence.

(Thomas, J., dissents.)

APPEAL from Perry Circuit Court.

Heard before Hon. B. M. MILLER.

Ejectment by L. C. Watson as trustee in bankruptcy, against Kate C. Duncan and others. Judgment for plaintiff and defendant appeals. Affirmed.

GEORGE D. MOTLEY, for appellants. RUTHERFORD LAPSLEY, W. J. BOYKIN, and KEITH & WILKINSON, for appellee.

THOMAS, J.—This suit was in ejectment to recover an undivided interest in the Valola plantation, in Perry county, Ala. Defendant's plea was the general issue.

The testimony tended to show that one L. Q. C. De Yampert was in possession of the lands in dispute at the time of his death, and that he devised them to his two sons, Asbury H. and Thomas W. De Yampert, for life, with remainder to their children. About 1870, as provided for in said will, a division of the lands was made between the two devisees. The plaintiff sought to show that the said Asbury H. De Yampert had two sons, and one daughter named Linda; that she married F. P. Duncan, by whom

[Duncan, et al. v. Watson.]

she had one child, a daughter that died an infant after the death of the mother, leaving its father as its next of kin. These facts were important, as showing the legal title to an undivided one-third interest in said lands.

One Robert De Yampert, grandson of A. H. De Yampert, who was only 22 years of age, was allowed to testify of the marriage of his Aunt Linda, and of her death, and of the birth and death of her said infant, which events occurred before the birth, or the personal recollection of the witness. Objection was interposed to the admission of this testimony, with motion to exclude the same. This motion was overruled by the court, and to this action of the trial court exception was duly reserved. In appellee's argument it is insisted that under the rule laid down in *Scheideg-ger, et al. v. Terrell,* 149 Ala. 338, 43 South. 26, this testimony was admissible, though it was not shown by the evidence that the facts so testified to by Robert De Yampert were based on declarations of since deceased members of his family.

It is therefore necessary that we examine the decisions touching the admission of testimony as to pedigree. Chief Justice ANDERSON recently stated the general rule in *Landers v. Hayes,* 196 Ala. 533, 72 South. 106, as follows:

"The rule seems to be that hearsay evidence is always admissible to prove pedigree, and this term embraces not only questions of descent and relationship, but also the particular facts of birth, marriage, and death and the time when these events may have happened. * * * These declarations, however, whether in writing or by word of mouth, should be confined to some members of the family as distinguished from a general rumor or neighborhood reputation, and as a predicate therefor it must appear that the declarant has since died."

And see, on this subject, *White v. Srother,* 11 Ala. 720; *Cherry v. State,* 68 Ala. 29; *Rogers v. De Bardeleben C. & I. Co.,* 97 Ala. 154, 12 South. 81; *Elder v. State,* 123 Ala. 35, 26 South. 213; *Chambers v. Morris,* 159 Ala. 606, 48 South. 687; *Palmer v. State,* 165 Ala. 129, 51 South. 358.

The expression in *Scheidegger, et al. v. Terrell, supra,* to the effect that in matters of pedigree the "general repute in the family," and "family tradition," may be testified to by a member of the family, requires a specific definition. The first authority cited by Judge SIMPSON in *Scheidegger's Case* is that of 1 Elliott on Evidence (section 371), where Mr. Elliott cites no authority in

support of his statement that "family tradition and repute" may be given in evidence. In 1 Greenleaf on Evidence (12th Ed.) § 103; Id. (16th Ed.) § 114, C, the statement that "general repute in the family,' proved by the testimony of a surviving member of it, has been considered as falling within the rule," is based on the authority of the case of *Doe v. Griffin*, 15 East, 293. In 2 Best on Evidence (Am. Ed., with Morgan's Notes) 498, it is said that matters of pedigree may be shown by the "general reputation of a family." No authority is cited in support of the statement. If, by the expressions "general repute in the family" (Greenleaf), "general reputation of a family" (Best), and "family tradition and repute" (Elliott), the authors meant general opinion and belief however acquired, the case cited by Greenleaf on the point does not support the text.

In *Doe v. Griffin, supra,* an action of ejectment, the question for decision was whether Thomas Griffin, a younger brother of the person last seised, through whom both the lessor of the plaintiff and the defendant were to establish title, if at all, had died without issue, which fact it was incumbent on the plaintiff to show. For this purpose, one of the family had been called to prove that, many years before, the said Thomas when a young man, had gone abroad, and that family report was that he had afterwards died in the West Indies; and that witness had never heard in the family of the said Thomas Griffin's having been married. The defendant moved for a new trial on the ground that this "was not sufficient evidence for the lessor of the plaintiff, on whom the affirmative proof lay, that Thomas had in fact died unmarried and without lawful issue." Lord Chief Justice Ellenborough, refusing the rule, declared that the evidence "was sufficient to call upon the defendant to give prima facie evidence, at least, that Thomas was married; for what other evidence could the lessor be expected to produce that Thomas was not married, than that one of his family had never heard that he was?"

It is thus evident that Lord Ellenborough considered that no question was made in respect of the death of said Thomas, but only of his marriage vel non. The witness had testified, as a member of the family, that she had never learned that he was married. It was not a question of reputation in the nature of an opinion, but a negative fact had been established and the effect of the holding was that the actual knowledge of the witness

[Duncan, et al. v. Watson.]

tended to do this, in such wise as to shift the burden of evidence to the defendant. It must be observed that these learned authors speak of family history and repute as something to be proved by a surviving member of the family, and impliedly say that such history and repute must have come down to him from deceased members of the family.

Mr. Wigmore (Evidence, vol. 2, § 1481) has deduced several rules for the introduction of evidence of pedigree. He thought that the reason of the rule was indicated in such phrases as, "no living witness can be had" (*Vowles v. Young*, 13 Ves. 140; *Barkley Peerage Case*, 4 Camp. 409; *Ellicott v. Pearl*, 10 Pet. 434, 9 L. Ed. 475), and in the statement that such evidence is admissible because living witnesses cannot "often" (*Fulkerson v. Holmes*, 117 U. S. 389, 6 Sup. Ct. 780, 29 L. Ed. 915) or "usually" be had (*Vowles v. Young, supra*), or that it is "the only evidence which can be obtained" (*Eisenlord v. Clum*, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836). Such declarations indicate that "where any living witness to the matter, particularly a member of the family, can be had, no hearsay statement of any deceased person can be received, * * * where the evidence is offered in the shape of family reputation, * * * unless it appears that members of the family cannot be had to testify," "there is in strictness no necessity of resorting to the hearsay of the family." The necessity for hearsay evidence lies in the inability to procure the declarant to testify, by reason of his death, insanity, or permanent or indefinite absence from the realm.—*Lowe v. State*, 86 Ala. 47, 5 South. 435; *Jacobi v. State*, 133 Ala. 1, 32 South. 158; *Jacobi v. Alabama*, 187 U. S. 133, 23 Sup. Ct. 48, 47 L. Ed. 106.

Mr. Jones defines the expressions "repute," "reputation" or "tradition," touching matters of pedigree, as "such declarations and statements respecting the pedigree as have come down from generation to generation from deceased relatives in such a way that even though it cannot be said or determined which of the deceased relatives originally made them, or was personally cognizant of the facts therein stated, yet it appears that such declarations and statements were made as family history ante litem motam, by a deceased person connected by blood or marriage with the person whose pedigree is to be established," and cites *Elder v. State*, 123 Ala. 35, 26 South. 213, and many other authorities.—2 Jones on Ev. § 312, p. 707.

The expression in *Scheidegger, et al. v. Terrell, supra,* "the general repute in the family," must be held to mean declarations. of deceased members of the family ante litem motam, and family history made ante litem motam, and family history and tradition handed down by deceased members of the family ante litem motam. The trial court committed reversible error in permitting the witness Robert De Yampert, to detail the general repute in his family as to the marriage of his Aunt Linda to Duncan, as to the birth of her child, and as to its death and the death of the said Linda, without predicate laid that the declarants from whom the information came were not living at the time of the trial.

In the case of *In re. Taylor* (D. C.) 188 Fed. 479, the respective jurisdictions of the clerk of the United States District Court and of the referee in bankruptcy, as to certain of the proceedings in the matter of the estate being administered in the bankrupt court, are discussed by Judge Grubb. See, also, *In re. Hockman* (D. C.) 205 Fed. 330, 30 Am. Bankr. Rep. 921.

(1) The petition to reopen the bankrupt's estate, the order referring that petition to the referee, the decree reopening the estate, and the application for, and the decree of discharge properly certified by the clerk of the court, were admissible in evidence.—*Pearce & Co. v. Fisher,* 170 Ala. 456, 54 South. 164; *Pacific Guano Co. v. Mullen,* 66 Ala. 586; Code 1907, § 3983.

(2) The subsequent order appointing Watson as trustee of said estate, his notice of acceptance, and a copy of his bond, each being a proceeding in bankruptcy after the estate was reopened, should be certified by the referee in bankruptcy, to authorize their introduction in evidence.—Collier on Bankr. § 39, subsecs. 7, 10; section 21, subsec. "d" of the Bankrupt Act; 3 Remington on Bankr. (2d Ed.) p. 2965; Code 1907, § 3983.

(3) The Bankrupt Act, by section 11d, provides that: "Suits. shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed."

This section must be construed with section 2, subd. 8, of the act. This latter section invests the court of bankruptcy with the power to close estates, whenever it appears that they have been. fully administered, by proving the final accounts and discharging the trustees, and to reopen them whenever it appears that they were closed before being fully administered. Upon the proper showing of jurisdictional facts, it is the duty of the court to

reopen the estate.—*In re. Newton*, 107 Fed. 429, 46 C. C. A. 399. The exercise of the power to reopen on timely application rests in the sound discretion of the court upon the consideration of all the circumstances.—*In re. Paine*, 127 Fed. 246; *In re. Goldman*, 129 Fed. 212, 63 C. C. A. 370. The jurisdictional fact to be averred and shown to the court is the nonadministration; being closed before full administration.—*In re. Paine, supra; In re. Newton, supra*. The application has been granted where there was a fraudulent transfer of the bankrupt's property (*In re. Reyburn* [D. C.] 145 Fed. 662), or because of newly discovered assets (*In re Irwin* [D. C.] 177 Fed. 284), or because of failure to account for moneys (*In re. Barton* [D. C.] 144 Fed. 540).

(4) The involuntary petition against the bankrupt was filed January 20, 1909, the bankrupt discharged September 5, 1910, and the bankrupt filed his suit in the circuit court of Perry county, Ala., on September 20, 1910, which suit resulted in Duncan's recovery of the one-third undivided interest in the land on November 17, 1914. The bankrupt's estate was closed on November 11, 1911, the petition to reopen was filed on January 16, 1915, and the decree thereon was rendered on February 4, 1915. Thus more than two years elapsed between the date when the estate was first sought to be closed and the date of the decree reopening the same.

The bankrupt proceedings were had at Huntsville, a part of the state distant from where the land lay and where the suit for its recovery was prosecuted. The two conveyances from the bankrupt, to his wife and to his attorney, were of date September 23, 1913, and were recorded respectively on November 10, 1914, and January 1, 1915. The petition to have the bankrupt estate reopened was filed just after the recording of these conveyances.

What, then, is a timely application? When does the statute of limitation begin to run? The English courts have held with great uniformity that where one is injured by the fraud of another, and the facts constituting such fraud do not come to the knowledge of the injured person until some time afterwards, the statute of limitations will not begin to run until the discovery of the fraud, or until, by reasonable diligence, they might have been discovered, if relief is sought in a court of equity.— *Booth v. Lord Warrington*, 4 Brown's Parliamentary Cas. 164; *South Sea Co. v. Wymondsell*, 3 P. Wms. 143; *Havenden v. Lord*

[Duncan, et al. v. Watson.]

*Annesley*, 2 Schoales & Lefroy, 631; *Blennerhassett v. Day*, 2 Ball & Betty, 104, 1229.

The leading federal cases on this question, the ruling of which has not been departed from, are *Bailey v. Glover*, 21 Wall, 342, 22 L. Ed. 636; *Rosenthal v. Walker*, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395; *Traer v. Clews*, 115 U. S. 528, 538, 6 Sup. Ct. 155, 29 L. Ed. 467; *Kirby v. Lake Shore R. Co.*, 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569. The rule stated by Mr. Justice Miller in *Bailey v. Glover, supra*, was: "In suits in equity where relief is ought on the ground of fraud, the authorities are without conflict in support of the doctrine that where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief provided suit is brought within proper time after the discovery of the fraud. We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. * * * *Snodgrass v. Bank of Decatur*, 25 Ala. 161 [60 Am. Dec. 505]. * * * .And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent fraud; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side."—*Upton v. McLaughlin*, 105 U. S. 640, 26 L. Ed. 1197; *Bilafsky v. Abraham*, 183 Mass. 401, 67 N. S. 318.

See, also *Mullen v. Walton*, 142 Ala. 166, 39 South. 97; *Jones v. Coan*, 146 Ala. 660, 41 South. 757; *Porter v. Smith*, 65 Ala. 169; *Lockard v. Nash, Adm'r*, 64 Ala. 385; Code 1907, § 4852.

[Duncan, et al. v. Watson.]

The case of *Kinder v. Scharff*, 231 U. S. 517, 34 Sup. Ct. 164, 58 L. Ed. 343, cited by appellants, is not in conflict with the view here expressed. In that case it had been found by the state court that during the pendency of the original proceedings the trustee suspected the alleged fraud, made inquiries, and did not pursue the matter—thus voluntarily abstaining from availing of the means at hand for the ascertainment of the facts. On error, to the Supreme Court of Louisiana, the court's finding of fact was held conclusive; the Supreme Court of the United States distinguishing the *Kinder Case* from that of *Bailey v. Glover, supra.*

In *United States v. Exploration Co.* (D. C.) 225 Fed. 854, it was held that the statute of limitations did not bar a suit to cancel a patent if brought within the limit of the statute from the time of the discovery of the fraud in its procurement. On adjudication of bankruptcy, and the appointment of a trustee, the latter is by operation of law vested with the title of the bankrupt, as declared by section 70 of the act, and of the date of the adjudication. Under the facts declared by the record the estate was timely opened; the suit for the bankrupt's interest in the land was not barred by the statute. The court committed no error in refusing to give the affirmative charge at defendant's request.

(5, 6) The majority of the court do not think that the evidence condemned by the writer relates to family repute, but that it was based upon a family Bible, and that the only objection to same is that the Bible was the best evidence; and that it, instead of the evidence of the witness as to its contents, should have been offered. They think, however, that the trial court should not be reversed on this point, as neither the objection to same, nor the motion to exclude, specified that the evidence was secondary and that the best was obtainable. This evidence was competent and relevant, and was not hearsay, and an objection on these grounds did not include the ground of its being secondary; and the trial court will not be reversed for admitting same, in the absence of the assignment of an appropriate and specific objection thereto. —*Bufford v. Little*, 159 Ala. 300, 48 South. 697.

Affirmed.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, SOMERVILLE, and GARDNER, JJ., concur. THOMAS, J., dissents as indicated. SAYRE, J., not sitting.