(126 So. 127)

**JARVIS v. STATE.   (1 Div. 527.)**

Supreme Court of Alabama.   Jan. 25, 1930.

Edward J. Grove, Francis J. Inge, and Arthur J. Kearley, all of Mobile, for appellant.

502

362, 71 So. 989; White v. State, 86 Ala. 69, 5 So. 674; Kelly v. State, 160 Ala. 48, 49, 49 So. 535; Spann v. Torbert, 130 Ala. 541, 30 So. 389.

The controlling decisions have been stated in McLaughlin v. Beyers, 175 Ala. 544, 57 So. 716, as follows:

"It was formerly held by this court that the granting or refusing of continuances was entirely within the discretion of the trial court, and that its exercise was 'beyond the jurisdiction of the appellate court to control or revise.' Humes v. O'Bryan, 74 Ala. 64, 78; Campbell v. White, 77 Ala. 397. Later it was said that 'the continuance of a case is within the discretion of the trial court, and the exercise of this discretion will not be reviewed on appeal, except in a case where it is shown that the court has abused the discretion vested in it.' Spann v. Torbert, 130 Ala. 541, 30 So. 389. Still later it has been declared that the action of the trial court will not be revised on appeal unless a gross abuse of the discretion is shown. Kelly v. State, 160 Ala. 48, 49 So. 535. It seems, however, that in criminal cases the constitutional right of the defendant to have compulsory process for his witnesses may sometimes be so involved in the question as to nullify the general rule as to discretion. Rodgers v. State, 144 Ala. 32, 40 So. 572."

And the opportunity for process or a showing was thus adverted to in Allen v. Bannister, 210 Ala. 264, 97 So. 820, as follows:

"Defendant moved for a continuance and then asked to be allowed to make a showing for two absent witnesses. Exceptions were reserved to the court's adverse rulings in both instances. Stating the reason for its refusal to wait for a showing, the court observed that the cause had been set for trial on Tuesday of the then current week, and was called for trial on Thursday; that defendant had been in attendance upon the court since Tuesday; and, in effect, that the showing should have been ready. In these rulings we find no abuse of the court's discretion, and hence no cause for a reversal."

In the case of Rodgers v. State, 144 Ala. 32, 34, 40 So. 572, 573, it is declared:

"It is next insisted that the court erred to the injury of the appellant in 'not putting the state upon a showing as to what defendant expected to prove by the absent witnesses English and Cuthbert.' It is true that, although the matter of continuance is, as a general rule, within the discretion of the trial court, and will not be reviewed, yet the courts will not allow this rule to operate to the extent of depriving a defendant of the benefits of the constitutional guaranty 'to have compulsory process for obtaining witnesses in his favor.' Walker v. State, 117 Ala. 85, 88, 23 So. 670; Hill v. State, 72 Miss. 527, 17 So. 375."

Charlie C. McCall, Atty. Gen., and Wm. P. Cobb, Asst. Atty. Gen., for the State.

THOMAS, J. The indictment for homicide and conviction was for murder in the first degree.

The homicide was committed on the morning of July 19, 1928; defendant was arrested on the same day; the indictment was returned on October 11, 1928, arraignment and plea of not guilty on October 16th; and it appearing to the court that appellant was unable to employ an attorney, counsel was appointed for defendant on the following day. Cause was set and called for trial on October 23d, at which time it was made known to the court that one of defendant's counsel was ill, and the court appointed additional counsel; the latter stated he could not properly represent defendant without additional time, and moved for a continuance, and the court set the case over for the next day. At said time the counsel who was ill reported and stated he had only a week to prepare his defense; that he learned the history of defendant's family in Mississippi and Florida; that his mother and others in the line were insane, and that his mother's sister was insane, and that her brother had two sons insane, and her grandfather was insane; that these facts should be duly presented to the jury, and he (counsel) had not had time to do this. The court declined the motion for continuance. We find no obvious or gross abuse of discretion by the trial court in setting over the cause for trial and refusal to grant the motion of defendant's counsel for further time or for a continuance. Knowles v. Blue, 209 Ala. 27, 95 So. 481; Lutz v. Van Heynigen Brok. Co., 202 Ala. 234, 80 So. 72; Berthold, etc., & Co. v. Phalin Lumber Co., 196 Ala.

In the instant case the fact was that Mrs. Burel was duly served with process before the request was made for attachment and motion for continuance in the absence of a showing. And in Sanders v. State, 181 Ala. 35, 50, 61 So. 336, 341, are the pertinent observations that in order to bring the matter properly before this court, the defendant is required to make proper motions and exceptions in the court below, "so that the record may show whether or not he has been deprived of a substantial right," Rodgers v. State, 144 Ala. 34, 40 So. 572, and to show whether the witness "can be reached and his attendance secured by compulsory process, and whether or not the issuance of the process would be futile," and "whether or not such evidence would be relevant or material, and, therefore, whether or not the process would be of any service to the accused."

In Amendment 6 to the Constitution of the United States are provisions, as in our section 6 of the Constitution of Alabama, to the effect that in criminal prosecutions the accused "be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor," etc. The right of attachment is not absolute and unqualified under all circumstances, but an application for continuance for execution of attachment is addressed largely to or rested in the sound discretion of the court, dependent upon the facts. 16 C. J. pp. 457, 458, §§ 460, 829, 830, 850, 854, and 855; Richardson v. State, 191 Ala. 21, 24, 68 So. 57; Sanders v. State, 181 Ala. 35, 49, 51, 61 So. 336; Gilbert v. State, 2 Ala. App. 94, 57 So. 127. That is to say, in the exercise of the right of attachment and extraordinary compulsory process to compel personal attendance, after ordinary compulsory process of subpœna is accorded, a large discretionary power is given the court, as to putting the adverse party on a showing for such absent witness, or in granting an application for a continuance for the issue and execution of an attachment. The court is not bound to order attachment ex mero motu, on failure of a witness to appear in answer to summons; it is only after the witness is "in contempt," and the "propriety and necessity of the process is shown."

The United States Constitution Ann. (Corpus Juris System) 1924, p. 189; 16 C. J. p. 457 et seq., § 829 et seq.; Gilbert v. State, 2 Ala. App. 94, 57 So. 127, and authorities, and section 6, Constitution of Alabama, p. 25, extend to "ordinary process" or subpœna for witnesses and proper showing therefor if absent and not in contempt. Childress v. State, 86 Ala. 77, 5 So. 775; Walker v. State, 117 Ala. 85, 23 So. 670; Winter v. State, 123 Ala. 1, 10, 26 So. 949; Martin v. State, 125 Ala. 64, 28 So. 92.

The facts of the case of Morris v. State, 193 Ala. 1, 68 So. 1003, are not as those before us. Here, the defendant had the ordinary process of the court, and his appeal for the extraordinary process by attachment was denied when he had the benefit of the showing admitted by the solicitor, subject to legal exceptions, and the witness was not in contempt of court.

And in Sanderson v. State, 168 Ala. 109, 113, 53 So. 109, 110, the court observed:

"The opinion in the Childress appeal was written under the influence of the 'compulsory process' provision of the Constitution of 1875, which was identical with that of the Constitution of 1901, in that regard, and the reordination of the provision in the latter Constitution effected to impress it with the previous interpretation put upon it by this court in Childress Case. It will be observed that the court took a distinction between 'ordinary' compulsory process and 'extraordinary' compulsory process; the latter being instanced in the process of attachment. * * * But when the inquiry is whether the right to extraordinary compulsory process has been denied or infracted, the discretion of the court to grant or refuse a continuance becomes an important factor. In the Childress Case this is so plainly set down as to require no restatement. So that in cases where the subpœna has been served, and the witness has failed to appear as summoned, and application is made to the court to exert its extraordinary process—attachment— and to continue the cause, and the court refuses and puts the prosecution on a showing, by the accused, as to what the absent witness or witnesses would testify if present, the only matter of review on appeal is: Did the trial court abuse its discretion in the premises?" Caldwell v. State, 203 Ala. 412, 416, 84 So. 272; Cagle v. State, 211 Ala. 346, 100 So. 318.

The defendant having reduced to writing what he expected to prove by his several absent witnesses (including Mrs. J. S. Burel), and the solicitor for the state having "then stated to the court that he would admit them, subject to legal exceptions," moved the court for a continuance for "such reasonable time as to properly prepare the case for the defendant and to make further investigation as to the insanity of the defendant." That motion was overruled and "due and legal exception" was reserved. The record then recites:

"When this case was called for trial on the 23rd day of October, 1928, the attorneys for the defendant requested a continuance, the Judge presiding stated that the case must go to trial on the next day. On the following morning, when the case was called for trial at the hour of 9:30 o'clock a. m., the attorneys for the defendant again requested

a continuance, and stated to the Court, showing that Mrs. J. S. Burel was (state contents of certificate). The Attorneys for the defendant asked for continuance on account of the absence of this witness, stating that they disliked the idea of asking for an attachment against a witness who was sick and confined to her bed, and the Presiding Judge then stated that this case was ordered to trial on yesterday and the defendant's attorneys given until this morning to make preparation for the case, and the Court declined to grant a continuance, but did send Pat Byrne, Sheriff of Mobile County, Alabama, to ascertain the condition of the said witness.

"Thereupon, the Attorneys for the defendant requested the Court for an attachment against Mrs. J. S. Burel, and the court declined to issue the attachment for said witness, but sent Pat J. Byrne, Sheriff of Mobile County, Alabama, to the address of the said witness, to ascertain her condition, and the said Sheriff made an immediate investigation, and reported to the Presiding Judge, before the trial was entered into, that the said witness was confined to her home, and her condition was as heretofore stated by Attorneys for Defendant, and as shown in the certificate of Dr. Heiter. The said Pat J. Byrne made the report under oath, and it was then and there shown and proven that the said witness was within the jurisdiction of the Court, but the Court declined to issue an attachment for said witness, or to continue said case, and upon refusal to issue attachment for said witness, the defendant then and there duly and legally excepted to the Court's ruling.

"The defendant then made a showing for the witness, which was admitted by the State, and later offered in evidence by the defendant."

It had been theretofore recited in the bill of exceptions, as to when and why the showing was prepared for Mrs. Burel, as follows:

"The Solicitor for the State then made the following statement, viz.:

" 'If they would write the showings out, it may be that we will admit them, rather than put the case off.'

"The Presiding Judge then stated that the Attorneys for the Defendant may dictate what they expected to show, so the Solicitor could say whether or not he would admit the showings, and stated that the case would be tried.

"The attention of the Court was then called to the fact that Mrs. J. S. Burel, who lived on St. Michael Street, in the City of Mobile, State of Alabama, was duly subpœnaed as a witness for the defendant on October 22nd, 1928. A certificate was offered to the Court, duly signed by Dr. Heiter, of the City Hospital, which certified that the said witness sustained a fracture of both bones of her forearm, and suffered a sprained ankle, which confined her to her home. The Attorneys for the Defendant then stated to the Court that the said Mrs. J. S. Burel was an important witness for the Defendant, and as she could not appear in Court, the Defendant moved that the case be continued for such a reasonable time as might be necessary to get her into Court.

"The Court overruled the motion, and stated to the Defendant's Attorneys to prepare showings as to what the absent witnesses would testify to.

"The Defendant then and there duly and legally reserved an exception to the Court's ruling.

"Counsel for the Defendant thereupon wrote out and handed to the Court and Solicitor, the following showings, as to what they expected to prove by the absent witnesses, viz.:"

In this action of the court there was no error.

■ There was no error in allowing the state's witness Merrill to testify that a wool sale was being conducted at the time of the alleged attempted bank robbery and homicide, and that large quantities of money were being exchanged in the bank on that day. It is true there was no direct evidence that the defendant and his associates in the crime or crimes were informed of the fact of the sale and the requirements of extraordinary money to accomplish that sale. It was competent under the defendant's indictment for murder of the official of the bank in charge at the time, and in the attempt to rob the bank and the bank official's effort to resist that crime. It was competent under defendant's plea of not guilty, and under his plea of insanity, as it tended to shed light upon his ability to formulate a design and plan of the robbery at an opportune time for his unlawful and criminal aggrandizement.

The defendant's confession was admitted in evidence after proper predicate; there was objection, exception, and motion to exclude, which were overruled by the court without error. Fincher v. State, 211 Ala. 388, 393, 100 So. 657; Milton v. State, 213 Ala. 449, 105 So. 209; Curry v. State, 203 Ala. 239, 82 So. 489; Charley v. State, 204 Ala. 687, 87 So. 177; Stone v. State, 208 Ala. 50, 93 So. 706; Birchfield v. State, 217 Ala. 225, 115 So. 297; Morton v. State, 206 Ala. 300, 89 So. 655; Banks v. State, 207 Ala. 179, 184, 93 So. 293, 24 A. L. R. 1359; Cunningham v. State, 207 Ala. 433, 93 So. 446; McCullars v. State, 208 Ala. 182, 94 So. 55.

The pistol and cartridges offered in evidence were "sufficiently identified" by Moslander, Cogburn, and the Rowells to allow the same over defendant's objection.

The witness Waldropp having testified of the defective mental condition of defendant's mother, and given in detail the unusual or abnormal action on which he based his judgment of her insanity, stated she was a "lineal descendant of the Jacobs family"; that he did not know "a man named Bill Jacobs," a grandfather of "defendant's mother"; that witness was "related to the Carroway family in a way" (defendant's mother was a Carroway); that witness was "a lineal descendant of one branch of the Bridges family; and Mrs. Jarvis, Jack's mother, was a descendant of another branch of that family." Witness was then asked: "This man, Bill Jacobs, do you know whether or not he became insane?" And upon objection by the solicitor before answer was made, was asked: "Do you know it of your own personal knowledge?" To which question the witness replied: "I do not, because he lived before my day." Thereupon, "the attorney for the defendant stated to the court that it is simply a matter of family history, such as birth and death, and that it was known within the family and recognized that Bill Jacobs was insane, and the question simply asked for a statement of one within that family." The court replied, to solicitor's statement that the witness "was not of the Jacob's family," that "it seemed that the witness was of a different family," and sustained objection to the question, and defendant excepted.

 The duty was upon defendant to show that the evidence sought was within the exception to the hearsay rule. Duncan v. Watson, 198 Ala. 180, 73 So. 448. The rule is that hearsay evidence is admissible to prove pedigree, descent and relationship, birth, marriage, death, and the date or time of these respective events. Perolio et al. v. Doe ex dem. Woodward Iron Co., 197 Ala. 560, 566, 73 So. 197; McMillan v. Aiken, 205 Ala. 35, 42, 88 So. 135; Riley v. State, 209 Ala. 505, 510, 96 So. 599; Landers v. Hayes, 196 Ala. 533, 72 So. 106; 2 Wigmore, § 14181; 2 Jones on Ev. p. 707, § 312. That is to say, the necessity for such hearsay lies in the inability to procure a declarant to testify by reason of death, insanity, permanent or indefinite absence from the realm. Lowe v. State, 86 Ala. 47, 5 So. 435; Duncan v. Watson, 198 Ala. 180, 73 So. 448.

The general repute in the family as to the facts immediately indicated means declarations made by deceased members of the family ante litem motam (before controversy instituted), and family history and tradition made and handed down by deceased members of that family ante litem motam (Duncan v. Watson, supra; Landers v. Hayes, supra), and made by some member of the family as distinguished from general rumor or reputation. And as a predicate it must appear that the declarant was unavailable. Bradley v. State, 21 Ala. App. 539, 541, 110 So. 157.

There was no error in the ruling of the trial court as to the denial of the statements of hearsay sought to be given by defendant's witness on the predicate laid.

The judgment of the circuit court is affirmed, and the execution of the sentence and judgment of the court will be by electrocution and in accordance with the provisions of the law, on the date fixed by this court, the date fixed by the lower court having expired pending appeal by defendant, and on his motion for suspension thereof was suspended by the court pending the appeal.

Affirmed.

All the Justices concur.